THOMAS W. WATERSON v. WILLIAM ROGERS, *et al.*

1. DEMURRER, *Not Sustainable.* A demurrer to the plaintiff's evidence should not be sustained where, the petition being sufficient, there is testimony tending fairly to establish every essential fact. (*Jansen v. City of Atchison*, 16 Kas. 358.)

2. AGENCY, *Assumed; Ratification.* One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own with all its burdens, as well as its benefits.

### Error from Marshall District Court.

ACTION brought by *Waterson* against *William Rogers* and *James M. Gallagher*, upon two promissory notes. Trial at the December Term, 1876, of the district court, and judgment for defendants. New trial denied, and *Waterson* brings the case here on error.

*A. E. Park*, for plaintiff.

*C. T. Mann*, for defendants.

The opinion of the court was delivered by

BREWER, J.: This was an action on two notes. A demurrer to the evidence was sustained, and this is the ruling complained of. This demurrer could have been sustained only in case of a total failure of proof upon some essential fact. If the plaintiff's pleading was sufficient, and there was testimony tending fairly to establish every essential fact, then the demurrer was improperly sustained, no matter on which side the preponderance of the evidence may appear to be. (*Jansen v. The City of Atchison*, 16 Kas. 358.) The notes were signed "Wm. Rogers, by Mary Rogers his wife," and the important question is as to her authority. If there was testimony tending fairly to establish such authority, then, without doubt, the demurrer should have been overruled, and the question submitted to the jury. Either prior grant or subsequent ratification would create the authority. There was no direct

34—21 KAS.

testimony of express grant or express ratification.  Was there testimony from which either could be implied, or from which a jury could fairly deduce the existence of either?  The circumstances were these:

Wm. Rogers, in October, 1875, left for the Pacific coast, to be absent two years.  Prior to his departure, he leased his farm to his brother-in-law, James M. Gallagher.  The lease was in writing, and for the term of two years.  The rent was to be a share of the crop.  He also turned over to him eighteen head of cattle, to be kept for three years for one-half the increase; also, sold him a span of horses, for which he took Gallagher's note secured by chattel mortgage; and also a steer, for which Gallagher promised to pay in the ensuing March.  Mrs. Rogers did not accompany her husband, but remained with Gallagher on the farm, a certain portion of the house being reserved for her use.  During the fall, Gallagher did some plowing, sowed some wheat, and put up about eighty tons of hay.  The lease and note were left by Rogers with his wife.  After he had gone, and during the following winter, some differences arose between Mrs. Rogers and Gallagher, the nature of which does not appear, and she proposed an arbitration.  He says she told him "that she wanted to submit all matters of difference between him and Wm. Rogers about the lease of the farm, and the cattle, by which she was to get possession of the same for Wm. Rogers."  He assented, and arbitrators were selected, she naming one, he another, and the two selecting the third.  The arbitrators decided that Gallagher should surrender the farm, the cattle, the hay, and the horses he had purchased; that Rogers should give up the note and chattel mortgage, and pay him the sum of $132.58.  In pursuance of this decision, the note, lease and mortgage were handed to the arbitrators, and by them burned.  Gallagher surrendered everything he had received from Rogers—farm, cattle, &c.—and Mrs. Rogers gave him the two notes in controversy, for the amount awarded by the arbitrators.  Mrs. Rogers took possession of all the property surrendered, and leased the farm for the

year 1876 to John Talbot, who occupied it that season. Rogers returned in October, 1876, and from that time to the time of trial occupied his farm, and had possession of the horses he had sold and the cattle he had turned over to Gallagher. At the time of his return, some of the hay which Gallagher had put up the prior season was still on the place, and Rogers fed it out to his stock. Mrs. Rogers claimed at the time of the arbitration that she had full authority from her husband in the premises. Rogers wrote a letter to one of the arbitrators, after he had heard of what had taken place, in which he thanked them for what they had done; said he did not blame them at all; but that Gallagher had swindled him, and he did not propose to pay the notes unless he was compelled to.

Upon these facts we remark that one who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own, with all its burdens, as well as its benefits. He may not take the benefits and reject the burdens, but he either accepts or rejects them as a whole. This is a general proposition, to which, of course, there may be exceptions and limitations. But still, it is potent in this case, as showing that there was some testimony from which a jury might deduce a ratification by him of the acts of the wife. He acted knowingly, and repudiated nothing of benefit to himself. Can he avoid the burdens? Counsel say that Gallagher abandoned the farm, and that Rogers was compelled to take it or let it run down, and that such mere measure of protection ought not to be construed as a ratification of the unauthorized act of his wife. But his action was not limited to that. He took possession of the hay which had belonged to Gallagher, and was given him by the arbitrators, and fed it to his stock. The cattle, and also the horses which he had turned over to Gallagher, and which were returned only in pursuance of the arbitration, he keeps the possession of. And in the letter which he wrote on receipt of the news, he does not deny his wife's authority, or propose to repudiate the entire action, but only to

contest the payment of these notes. Nowhere does he insist upon Gallagher's continuing the lease or the contracts he had made with him, or offer any objection to the termination of these and the surrender of the property back to himself. Now it seems to us that in these matters there was testimony tending to show a ratification. We do not mean to be understood as saying that it was conclusive, or was not subject to explanation or contradiction, but we do hold that if upon it the jury had found there was a ratification, we should not have felt warranted in setting aside the verdict as entirely without support.

The judgment of the district court will therefore be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.