Points Decided.

(April 30, 1926.)

J. F. BOW, Appellant, v. R. & N. OIL GAS CO., LTD.,
J. C. STICKLER, President, and F. M. WILLMORTH,
Secretary; J. C. STICKLER, CHAS. C. TOBIAS,
H. C. PRESCOTT, L. R. HUNT, C. M. BAKER, A. W.
McNEIL, E. W. WADDELL, BERT W. REEVES,
F. M. WILLMORTH, E. W. STEPHENSON, J. D.
KNOWLTON, CHAS. VERHEYEN, H. L. FINLEY,
MAX LA LANDE, F. K. ROBINSON, S. H. CHASE,
W. H. HOLLENBECK, W. G. HOLLENBECK, J. A.
McROBBIE, S. N. CROUCH, H. L. BROWN, and
J. H. PRESCOTT, Respondents.

[251 Pac. 295.]

BILLS AND NOTES—VALID DELIVERY—PLEADING—WITNESSES—IMPROPER
CROSS-EXAMINATION — UNDERSTANDING AMONG INDORSERS NOT
BINDING ON PAYEE—UNAUTHORIZED DELIVERY RATIFIED BY IN-
DORSERS.

1. Absence of valid delivery of note, sued on and in plain-
tiff's possession, is, under C. S., sec. 5883, matter of affirmative
defense, and not available under general issue.

2. Plaintiff having merely testified that note was the one set
out in complaint, was owned by him and was wholly unpaid,
cross-examining him as to understanding or agreement as to
what should be done with it before delivery was improper.

3. Though there was an understanding among indorsers that
there should be more indorsers before delivery of note, yet,
there being no agreement of payee, it was not effective against
payee after delivery of note.

4. Though delivery of note was unauthorized as to indorsers,
they, by voluntarily accepting the benefits received by its
delivery, with knowledge thereof and without protest, ratified
it and assumed the burdens imposed.

Publisher's Note.

1. See 3 R. C. L. 859.
2. See 28 R. C. L. 604.

See Bills and Notes, 8 C. J., sec. 548, p. 368, n. 93, 97 New; sec.
1211, p. 927; n. 20 New; sec. 1258, p. 962, n. 35 New.

Witnesses, 40 Cyc., p. 2508, n. 22; p. 2509, n. 24.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action on promissory note. Judgment for defendants. Appeal from judgment and order overruling motion for new trial. *Reversed* as to certain defendants and new trial granted as to others.

T. A. Walters and F. W. Byrd, for Appellant.

That the note was not to be delivered until those who had signed it had had an opportunity to examine it, and withdraw their names was a condition precedent, and evidence thereof was not admissible under a general denial. (*Bloom v. Horwitz,* 162 N. Y. 120; *Carver v. San Joaquin Cigar Co.,* 16 Cal. App. 761, 118 Pac. 92; *Vanderford, Admx., v. Farmers & Merchants' Nat. Bank,* 105 Md. 164, 66 Atl. 47, 10 L. R. A., N. S., 129; *Lewis County v. State Bank,* 31 Ida. 244, 170 Pac. 98; *Citizens' State Bank v. Thompson,* 30 Ida. 460, 167 Pac. 22; *Mitchell v. Altus State Bank,* 32 Okl. 628, 122 Pac. 666.)

The principal has a reasonable time to ascertain the facts and return what he has received under the contract. Delay beyond a reasonable time amounts to acquiescence and constitutes a ratification. (*Northwestern Lumber Co. v. Cornell,* 99 Wash. 250, 169 Pac. 590, L. R. A. 1918C, 220; *Depot Realty Syndicate v. Enterprise Brewing Co.,* 87 Or. 560, 170 Pac. 294, 171 Pac. 233, L. R. A. 1918C, 1001; *Clews v. Jamieson,* 182 U. S. 461, 21 Sup. Ct. 845, 45 L. ed. 1183; 3 Page on Contracts, 3034; *Blackwell v. Kercheval,* 27 Ida. 537, 149 Pac. 1060, 29 Ida. 473, 160 Pac. 741.)

It is no defense to the defendants that they signed upon a mere representation or promise that other stockholders of the company would sign the note before it was delivered. (*Mitchell v. Altus State Bank, supra; Sellers v. Territory of Oklahoma,* 32 Okl. 147, 121 Pac. 228; *McGregor v. Skinner* (Tex. Civ. App.), 47 S. W. 398; *German-American Bank v. People's Gas & Elec. Co.,* 63 Minn. 12, 65 N. W. 90.)

Rhodes & Partridge, Frank Estabrook and Van de Steeg & Breshears, for Respondents.

The court did not err in permitting the defendants to prove that the note in question was not delivered under their denial of the delivery of the same. (*Hunter v. First Nat. Bank,* 172 Ind. 62, 87 N. E. 734; *Wickizer v. Bolin,* 22 Ind. App. 1, 53 N. E. 238; *Kurth v. Farmers & Merchants' State Bank,* 77 Kan. 475, 127 Am. St. 428, 94 Pac. 798, 15 L. R. A., N. S., 612; *Palmer v. Poor,* 121 Ind. 135, 22 N. E. 984, 6 L. R. A. 469; *Pastene v. Pardini,* 135 Cal. 431, 67 Pac. 681.)

The court did not err in permitting the defendants to introduce evidence showing the conditions upon which the note in question was to be delivered. (*Ewell v. Turney,* 39 Wash. 615, 81 Pac. 1047; *Gamble v. Riley,* 39 Okl. 363, 135 Pac. 390; *Selma Sav. Bank v. Harlan,* 167 Iowa, 673, 149 N. W. 882; *W. J. Lemp Brewing Co. v. Secor,* 21 Okl. 537, 96 Pac. 636; *Knight v. Hurlbut,* 74 Ill. 133; *Belleville Sav. Bank v. Bornman,* 124 Ill. 200, 16 N. E. 210; *Seattle v. L. H. Griffith Realty & Bank Co.,* 28 Wash. 605, 68 Pac. 1036; *Mitchell v. Altus State Bank,* 32 Okl. 628, 122 Pac. 666; *Lewis County v. State Bank of Peck,* 31 Ida. 244, 170 Pac. 98; *Burke v. Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L. ed. 698; *Ware v. Allen,* 128 U. S. 590, 9 Sup. Ct. 174, 32 L. ed. 563; C. S., sec. 5883.)

Stickler did not purport to represent any of the defendants as their agent, except the company, and there is no rule of law by which any of them may be deemed to have ratified his act in delivering the note in question. (*Barnett Bros. v. Lynn,* 118 Wash. 315, 203 Pac. 389; *Backhaus v. Buells,* 43 Or. 558, 72 Pac. 976, 73 Pac. 342; *Ilfeld v. Ziegler,* 40 Colo. 401, 91 Pac. 825; *Puget Sound Lumber Co. v. Krug,* 89 Cal. 237, 20 Pac. 902; *Linn v. Alameda Min. & Mill Co.,* 17 Ida. 45, 104 Pac. 668.)

JOHNSON, Commissioner.—An examination of the record in this case discloses that the R. & N. Oil Gas Co. was an Idaho corporation with its principal place of business at

Nampa, Idaho, formed to promote an oil venture in the state of Wyoming. Like so many of such companies formed for such purposes, it did not prove to be the bonanza expected. Plaintiff, J. F. Bow, had advanced money to the company and held four notes of the company; one for $300, one for $4,000, one for $3,000, and one for $700, amounting in all to $8,000. He testified that F. M. Willmorth, Burton W. Reeves, H. C. Stickler, H. C. Prescott, Chas. C. Tobias, E. W. Stephenson and J. D. Knowlton were indorsers on the $4,000 note; that J. C. Stickler, C. M. Baker, S. H. Chase, William Belcher, J. D. Knowlton, H. C. Prescott, H. W. Waddell, F. M. Willmorth, H. L. Brown, Max A. La Lande, Chas. C. Tobias and L. R. Hunt were indorsers on the $3,000 note. All of the indorsers were stockholders in the company and there is no contention that the money involved in this action was not expended by and for the company. The company also owed Annie M. Stickler $500, evidenced by a note in that amount. It owed the president of the company, J. C. Stickler, $332 for money he had expended for the company, and $100 expenses. The various notes, sums and interest amounted to $9,350.

A meeting was had in Nampa of a few of the stockholders and directors of the company and from all the evidence as to this meeting it is doubtful if it was a legal meeting of the corporation, but in any event it was arranged with the plaintiff to have him advance enough money to pay off the claims of J. C. Stickler and Mrs. Stickler. The other notes, held by him, being past due, it was agreed that a new note should be executed in favor of plaintiff for $9,350, which would cover the amount of the notes held by him as well as the additional amount to be advanced by him covering the Stickler claims against the company. It was also understood that the new note should be circulated among the stockholders and that as many as possible should be secured as indorsers on said $9,350 note, and the said note contains the names of twenty-two indorsers. The president of the company, J. C. Stickler, took said $9,350 note to plaintiff, turned it over to him and received from plaintiff all the

old notes and $932 in cash, of which $500 was for Stickler's wife and $432 and some cents for himself. The old notes were then destroyed by some of the defendants.

Plaintiff has therefore advanced to the company, for the benefit of the stockholders, some nine thousand dollars, and this action is to recover on the $9,350 note, no part of which has been paid. The complaint set forth a cause of action against defendants on account of said note. An answer was filed by part of the defendants in which they admit the execution of said note, but deny the delivery of the note to plaintiff. Defendant J. A. McRobbie filed a separate answer in which he also admits the execution of the note but denies that it was delivered to plaintiff or that it was issued for a valuable consideration. The case was tried by a jury that returned a verdict in favor of defendants, respondents here. Plaintiff moved for judgment *non obstante veredicto,* which was denied by the court and judgment was entered in favor of defendants. A motion for a new trial was denied. This appeal is from the order overruling the motion for a new trial and from the judgment.

In the specifications of error but nine assignments are enumerated. The main question, however, involved in this action is: Was there a valid, legal delivery of the note in question? If there was, defendants are each and all of them liable, and if there was not, they are not liable unless by their acts they ratified the delivery.

[1] Defendants were permitted to introduce evidence, under their denials, without an affirmative defense, to show that there was an understanding between the parties that the note was not to be delivered to plaintiff until it was first presented to all the stockholders of the company in an effort to secure as many of them as possible as indorsers on the note, and that when this was done it should be examined by the directors and if they were satisfied the note should be referred back to the stockholders who had signed, for their approval; that when the stockholders had examined said note and no objection was raised as to the number of

signers by anyone who had signed, it should be turned over to plaintiff as security for money loaned said company.

Appellant contends that conditional delivery is an affirmative defense which must be pleaded, while respondent contends that there was never at any time a valid legal delivery of the note in question, and that nondelivery may be proven under the general issue.

C. S., sec. 5883, being a part of the uniform negotiable instrument law, provides that: ''Where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved.''

The rule is stated in 3 R. C. L. 859, sec. 40, as follows: ''The holder of a bill or note need not prove the delivery; for the law will presume a delivery, unless something is made to appear which counteracts such presumption. If the payee of a note has it in his possession, that fact is deemed to be *prima facie* evidence that it has been delivered.''

The California court in the case of *Pastene v. Pardini,* 135 Cal. 431, 67 Pac. 681, used the following language: ''The delivery was *prima facie* established by plaintiff's production and proffer of the note.

''As to the second and third contentions, that the defendant was deprived of his defenses of lack of consideration and payment, it is sufficient to say that such defenses are affirmative defenses to be pleaded, and this defendant did not do. He contented himself in his answer with a naked denial of the averments of the complaint, and this, as has been repeatedly held in this and in other code states, is not sufficient to raise either of these issues. 'A promissory note imports a consideration, and therefore it is not necessary that a consideration should be specially alleged. If there was no consideration, the defendant should have filed an answer setting up a want of it as a defense to the action.' *Winters v. Rush,* 34 Cal. 136. The introduction of the unpaid note by plaintiff was sufficient evidence, if evidence was necessary, in support of his negative allegation of nonpayment . . . . but payment is an affirmative defense, which must be pleaded.''

This California case has been uniformly followed in many decisions in that state since its rendition.

In *New England Nat. Bank v. Hubbell,* 41 Ida. 129, 238 Pac. 308, this court had occasion to pass directly upon the burden of proof in such a defense as is claimed in this case. There was, however, an affirmative defense as it appears by the following statement therein contained:

"Respondent's answer to appellant's complaint alleged as an affirmative defense that it was mutually and specifically agreed between the State Bank and each of the respondents indorsing the original note that said note should not be used, or owned, or take effect, or be held, or considered delivered to the State Bank, or be an obligation as to the respondents until the signature of each, every one, and all, of the stockholders of the company were duly indorsed upon the said note; that there were some twenty, and at least eighteen, members and stockholders of the company. The note was actually indorsed by six stockholders only."

As to the point now under discussion, the court said:

"The party setting up the defense of conditional delivery of a promissory note has the burden of proving that there was no delivery so as to give effect to the instrument."

Decisions from Washington, Colorado and Kansas are cited following this language, and in each of said cases there was an affirmative defense alleged.

The Kansas case, so cited, *Hoskinson v. Bagby,* 46 Kan. 758, 27 Pac. 110, contains the following:

"The following instruction given by the court to the jury states the law correctly, to-wit: 'You are instructed that the possession of the note by the payee thereof is *prima facie* evidence of its delivery which must be overcome by evidence of the defendants; otherwise, it must be regarded as sufficiently proved.' As the plaintiff by the pleadings and also by the evidence made out a *prima facie* case concerning the execution of the note and its delivery, as well as everything else necessary to entitle him to recover, it then devolved upon the defendants to prove their affirmative defenses that there was a parol agreement and other facts on account of

which the note was not regularly executed or delivered, and that it was without consideration."

C. S., sec. 5883, hereinbefore quoted, certainly requires the defendant, whose signature appears on the instrument, to affirmatively allege and prove that there is not "a valid and intentional delivery" of a note which is no longer in his possession. The legislature, recognizing the great part negotiable instruments play in business transactions of to-day, saw fit to place every protection possible around such paper, and it is certainly not placing an unfair burden on a person who places his name on commercial paper to require him to affirmatively prove, if his signature is admitted, that it was not delivered.

[2] The plaintiff, on direct examination, testified that the note shown him was the note set out in the complaint; that he owns the note. The note was offered in evidence, without objection, and he then testified that no part of the principal or interest had been paid. This is all of his direct examination. On cross-examination he was asked as to the dates of signatures, to which plaintiff objected on the following grounds: "Objected to, if the court please, as irrelevant and immaterial as to any matters relative to the signing of it; the signing is admitted by the pleadings and there is no issue as to the signing of the note." "Mr. Rhodes: I am asking about the time. We admit the signature." On this theory, the court permitted a number of questions, and then followed this question: "Q. Had there been any discussion between yourself and the stockholders present as to who else should sign the note and what should be done with the note before delivery? Mr. Walters: Now we wish to offer the objection here as incompetent, irrelevant and immaterial; not proper cross-examination, and not within the issues claimed by the pleadings, and attempting to vary the terms and conditions of a written instrument." The objection was overruled and counsel for defendants was permitted to go fully into the whole matter of what took place at the meeting and afterwards as to the delivery of the note.

This was improper cross-examination and the defendants should not have been permitted to introduce evidence relative to an understanding or agreement as to when the note in question was to be delivered under their denials. This was prejudicial error. In order to make evidence of that character admissible, and it may be either oral or in writing, it must be set forth and specially pleaded as an affirmative defense in the answer.

Appellant assigns as error the denying of his motion for judgment *non obstante veredicto,* and we will therefore examine the evidence further to see if the court erred in denying the motion. The motion only asks for judgment as against the following named defendants, to wit, J. C. Stickler, F. M. Willmorth, Chas. C. Tobias, H. C. Prescott, C. M. Baker and Chas. Verheyen. For convenience we will discuss the evidence in regard to the last named defendants in the order the testimony appears in the transcript.

Chas. C. Tobias did not deny being an indorser on the $4,000 note, but he denied being an indorser on the $3,000 note. He was present when these notes were destroyed. He knew that the $9,350 note sued upon had been delivered at the time the notes were destroyed. He was a director in the company.

C. M. Baker admitted being an indorser on the $3,000 note. He circulated the $9,350 note and secured two signatures. He knew that the plaintiff had delivered back the $3,000 note. He learned of it about a week after its delivery. He knew that plaintiff had the $9,350 note. He said nothing to plaintiff for some time, and told the plaintiff that he was willing to pay his share.

As heretofore stated, plaintiff testified positively that each and all of the names included in the motion were indorsers on the former notes except Chas. Verheyen, whose name he did not mention.

H. C. Prescott admitted that he was an indorser on one of the notes destroyed; would not say that he was not on both notes; he was present at the first meeting and signed the $9,350 note at that time; he testified that: "I was one

of them to put my name on that note but never expected to pay it on account of the assets.'' He circulated the note. He further testified as follows: ''Q. Well, were the signers of this note to have any opportunity after they signed to examine the note? A. Why, I don't know whether I told them that or not. Q. Was that matter discussed in the meeting? A. Yes, sir, but I don't know whether I told every one of them or not.'' Again on cross-examination, the following appears: ''Q. You say you never would have signed the note, Mr. Prescott, if you had not thought that the company had assets enough to pay it out? A. No, or a man is a fool that would.''

F. M. Willmorth was the secretary and one of the board of directors of the company. He was on both of the old notes. He was present when these old notes were destroyed. He knew that the plaintiff had the $9,350 note when the old ones were destroyed. Both of the old notes were past due. He said nothing to the plaintiff about the $9,350 note until after its maturity.

J. C. Stickler was president of the company from its organization. He was an indorser on both of the old notes. He circulated the $9,350 note. He delivered the $9,350 note to plaintiff and the old notes were delivered to him. He received from plaintiff $500 to be paid to his wife and he also received $432 for himself. He destroyed the old notes after turning over the new one. He further testified: ''There was one other conversation that Mr. Bow and I had. He asked me, 'What did you do with those old notes?' 'Well,' I said, 'I destroyed them.' He says: 'Why did you do that?' I said to Mr. Bow, 'What do you do with a note after paying it?' 'Well,' he said, 'I destroy it.' 'Well,' I said, 'that is what I done.' '' He further testified in reference to the note sued upon: ''Q. And have you at no time since denied your liability on the note? A. Myself? Q. Yes. A. No, sir. Q. And don't now deny it? A. No, sir, I do not.'' The new note was presented to every stockholder except one, George Everett, and twenty-two were all that would sign it.

[3]  The evidence discloses that, at the meeting wherein the note involved in this case was prepared and the matter of its circulation among the stockholders discussed, plaintiff was present, but there is no testimony that he agreed to anything in reference to the note. The most that can be gathered from the testimony is that he agreed to advance the additional money and include the old notes in the new when it was presented to him, after having been circulated. He was present when the plan to secure indorsers was adopted by those present.

This court, in *New England Nat. Bank v. Hubbell, supra,* said:

"The general rule would seem to be that, in the absence of an agreement that an indorsement shall not take effect as a contract until additional indorsers are secured, a promissory note is complete as a contract against the indorser, upon its manual delivery to the payee, regardless of whether it is the indorser or the payee who undertakes to procure additional signatures. If there is such an agreement limiting the effect of the indorsement, the note does not constitute a liability against the indorser until additional indorsements are procured. An understanding by one party alone is not an agreement."

[4]  The evidence is clear that J. C. Stickler, F. M. Willmorth, Chas. C. Tobias, H. C. Prescott and C. M. Baker, against whom the motion was made for a judgment, were each indorsers on either one, or both, of the larger of the old notes held by plaintiff; that they procured from plaintiff the notes so indorsed by them, by delivering to plaintiff a new note also indorsed by each, as well as by others; that the old notes were destroyed by them; that they each knew of the delivery of the new note and made no protest to plaintiff at any time, or at least not until after its maturity.

To allow these last-named defendants to set up as a defense, under the circumstances, that the new note was not delivered would certainly be unfair and unjust; but even so, as to them, they certainly ratified the act of delivery by their conduct after its delivery to plaintiff.

It becomes unnecessary to discuss the question of agency. While Stickler performed the manual act of delivering the note to plaintiff, yet by their conduct they made such delivery their act. They accepted the benefit received by its delivery, and they thereby assumed the burdens imposed.

This court, in *Blackwell v. Kercheval,* 27 Ida. 537, 149 Pac. 1060, quotes with approval the following language of the supreme court of Kansas, in *Waterson v. Rogers,* 21 Kan. 529: "One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own with all its burdens, as well as its benefits."

The motion for a judgment notwithstanding the verdict should have been granted as against defendants J. C. Stickler, F. M. Willmorth, Chas. C. Tobias, H. C. Prescott and C. M. Baker, and the lower court should be directed, under the stipulation of counsel that that court fix the amount to be allowed as attorney fees, to fix such attorney fees and enter judgment against each of said parties.

The record discloses that the facts as to some of the other defendants are the same as to the last above mentioned, but since they are not included in the motion they are not included here.

The cause should be reversed and a new trial granted as to the other defendants.

William A. Lee, C. J., and Budge and Givens, JJ., concur.

Wm. E. Lee, J., did not sit at the hearing or take part in the decision in this case.

PER CURIAM.—The foregoing opinion is hereby adopted as the opinion of the court. The judgment of the lower court is reversed and the cause remanded, with direction to said court to enter judgment against the defendants J. C. Stickler, F. M. Willmorth, Chas. C. Tobias, H. C. Prescott and C. M. Baker, and each of them, and to fix the amount to be allowed as attorney fees. It is ordered that a new trial be granted as to the other defendants. Costs awarded to appellant.

(November 20, 1926.)

ON PETITION FOR REHEARING.

JOHNSON, Commissioner.—Application for rehearing was made and granted in this case. In the original opinion it was stated that the facts, as to some of the other defendants, are the same as to those against whom judgment was directed to be entered, and it now appearing to the court that it might be possible for the plaintiff to collect the entire amount of the judgment from one or more of those against whom judgment was directed to be entered and to abandon the action against any of the others, we therefore conclude that the original opinion should be modified to strike therefrom the direction to the lower court to enter a judgment notwithstanding the verdict against the defendants J. C. Stickler, F. M. Willmorth, Chas. C. Tobias, H. C. Prescott and C. M. Baker.

The case is therefore reversed as to all the defendants and a new trial granted as to all, with costs to appellant.

Budge, Givens and Taylor, JJ., concur.

PER CURIAM.—The foregoing opinion is hereby approved and adopted as the opinion of the court, and it is so ordered.

Wm. E. Lee, C. J., and T. Bailey Lee, J., took no part.