[No. 20447.   Department Two.   September 22, 1927.]

BROTHERHOOD STATE BANK OF SPOKANE, *Respondent*, v.
WILLIAM CHAPMAN, *Appellant*.[1]

MRS. WILL W. SIMPSON *et al.*, *Respondents*, v. RIALTO
BUILDING COMPANY *et al.*, *Respondents*.[1]

[1] CORPORATIONS (157)—REPRESENTATIVE OF CORPORATION—USE OF CORPORATE OR INDIVIDUAL NAME. The fact that a chattel mortgage on the property of a corporation was executed individually by the president and general manager of the company, who originally held all the stock of the company, does not show an abandonment of the corporation or divest its title, where the president had disposed of a large part of the stock held by him, and was no longer the sole owner of the stock.

[2] SAME (157). The fact that a corporation, after attempting to change its name, carried on business under the new name assumed by it, does not show an abandonment of the corporation, or that the business was conducted as the private business of the corporation's president and manager under such assumed name; since a corporation may contract under an assumed trade name and be bound thereby.

[3] SAME (42)—STOCK—SUBSCRIPTION TO STOCK—PAYMENT IN PROPERTY. Where all the stock of a corporation was issued in consideration of the property of its promoter, which was afterwards treated as the property of the corporation, the title thereto

[1]Reported in 259 Pac. 391.

passed to the corporation without any formal transfer by bill of sale or otherwise.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered October 4, 1926, upon findings in favor of the plaintiffs, in consolidated actions for the foreclosure of a chattel mortgage and the appointment of a receiver for a corporation. Affirmed.

*W. B. Mitchell* and *S. S. Bassett,* for appellant.

*C. C. Upton* and *Danson, Lowe & Danson,* for respondents.

PARKER, J.—The first of these consolidated causes was commenced, in the superior court for Spokane county, by the Brotherhood State Bank against William Chapman and the sheriff of that county, seeking the transfer to that court of their attempted foreclosure, by summary notice and sale, of a chattel mortgage purporting to have been executed to Chapman by O. V. Newton upon property claimed by him as his individual property; the bank alleging that the property belongs to the Rialto Building Company and that the company is insolvent and indebted to the bank.

The second of the causes was commenced by Mrs. Simpson and other stockholders of the Rialto Building Company seeking the appointment of a receiver to take charge of all of its business and property, including the property covered by the Chapman mortgage, looking to the winding up of its business, alleging as cause therefor that it is insolvent and that its officers have abandoned its business and property, including the property covered by the Chapman mortgage.

Orders of the superior court were entered transferring the mortgage foreclosure to the superior court, restraining the attempted foreclosure by summary no-

tice and sale, consolidating these causes and appointing
a temporary receiver to take charge of the business
and property of the Rialto Building Company, includ-
ing the defense of the foreclosure of the Chapman
mortgage; it being agreed, however, by all the parties,
that the property covered by the Chapman mortgage
remain in the hands of the sheriff pending the deter-
mination of the question of the ownership of that prop-
erty.

The consolidated cause proceeded to trial upon
the issue, principally, of the ownership of the prop-
erty covered by the Chapman mortgage and his claimed
rights of foreclosure thereunder, and, incidentally, of
the making of the receivership permanent for the pur-
pose of finally winding up the business of the Rialto
Building Company. Findings and judgment were
made and rendered denying to Chapman foreclosure
of his claimed mortgage lien upon the property, be-
cause it belongs to the Rialto Building Company, and
making the receivership permanent for the purpose of
winding up the business of the company because of its
insolvency and the abandonment of its business and
property by its officers. From this disposition of the
causes by the superior court, in so far as it is adverse
to Chapman, he has appealed to this court.

For some time prior to July, 1920, O. V. Newton
was the owner of a moving picture business, carried
on by him in the town of Hilliard, in Spokane county.
He and two associates then caused to be incorporated,
under the laws of this state, the Rialto Building Com-
pany. The purpose was, to have the corporation take
over his business and the property used incident
thereto, he to receive payment therefor in the shares
of stock of the corporation. He thus became the owner
of all the stock of the corporation, immediately trans-
ferring a very few shares to the other two incorpora-
tors.

The corporation took over the business and property accordingly, causing the business to be continued and made efforts to expand the business by the construction and equipment of a new theater building. About a year thereafter, a change in the name of the corporation to "Rialto Amusement Company" was decided upon, and amendatory articles of incorporation were prepared accordingly, but such contemplated change of name was not legally consummated, though the business of the corporation was practically wholly thereafter carried on in the name of Rialto Amusement Company, as though such change in name had been fully consummated. We find, however, some documents executed thereafter in the name Rialto Building Company, yet the public generally was dealt with by the use of the name Rialto Amusement Company. Newton had, prior to May, 1921, sold a large portion of the stock of the corporation held by him, for which certificates were issued, evidently for the most part, in the name of Rialto Amusement Company. Newton from the beginning has been the president and manager of the corporation and the business. The evidence, we think, plainly shows that the Rialto Building Company was at no time divested of its title to any of the property used in the business, though the business was conducted after about May, 1921, in the name of Rialto Amusement Company.

On October 24, 1924, Newton executed and delivered to Chapman, his step-father, a promissory note in the principal sum of $12,000, evidencing an indebtedness by him to Chapman, practically all of which was then a pre-existing indebtedness. To secure this indebtedness, so evidenced, Newton then executed and delivered to Chapman a chattel mortgage upon a pipe organ, two motion picture machines, four hundred and fifty opera chairs, and some other personal property,

all constituting the equipment of the motion picture theater then being operated in the name of the Rialto Amusement Company, all of which had been acquired as part of the property of the business which had, since the incorporation of the Rialto Building Company, been conducted in the name of the Rialto Building Company or the Rialto Amusement Company. This mortgage was executed by Newton personally and intended by him, and also by Chapman, as being a mortgage upon that property as the individual property of Newton. Whether or not it was, in fact, Newton's individual property at that time or the property of the corporation, is the principal question here to be decided.

[1]  It is somewhat difficult to follow the argument of counsel for appellant Chapman, put forward in support of his claim that Newton was in fact, at the time of the execution of the mortgage and thereafter, personally the owner of this mortgaged property. One contention seems to be that, at the time of the execution of the mortgage, the business had been abandoned as a corporate business and that Newton had rightfully assumed control and ownership over all the property used in connection therewith; it being argued that Newton was then the owner of all the shares of stock in the corporation, and was conducting the business and assuming ownership thereof under the trade name, Rialto Amusement Company. Such contention might have some foundation to rest upon, were it a fact that Newton was then the owner of all the stock of the corporation and no rights of creditors were involved. But the fact is, as we read this record and as the trial court manifestly viewed it, Newton was not the owner of anywhere near all of the stock of the corporation at that time.

[2]  Further contention is made in behalf of the ap-

pellant Chapman that the continued carrying on of the business, since about May, 1921, in the name Rialto Amusement Company, Newton being in charge of the business, was sufficient evidence of Newton's personal ownership thereof and the use of that name as his personal trade name, to require the public, including Chapman, to so regard the business. We do not think this is a fair conclusion from the facts. The name Rialto Amusement Company could just as well be considered as an assumed trade name for the conducting of the business of the Rialto Building Company as it could be considered an assumed trade name for the conduct of the business as Newton's private business. Indeed, the evidence, to our minds, leads to the conclusion that the public, whether it dealt with the concern as Rialto Building Company or as Rialto Amusement Company, dealt with it as the business of a corporation. The general rule of law seems to be that a corporation may contract and do business in an assumed name as well as can an individual, and be bound thereby in its corporate capacity. 14 C. J. 324. In the early case of *King v. Ilwaco R. & Nav. Co.*, 1 Wash. 127, 23 Pac. 924, this court seems to have recognized such to be the general rule. We therefore conclude that the mere fact that this business was, since about May, 1921, conducted in the name Rialto Amusement Company does not at all have the effect of impairing the claimed rights of the Brotherhood State Bank as a creditor, or the rights of Mrs. Simpson and her co-plaintiffs, as stockholders, under the circumstances here shown.

[3] Some further contention is made that there was never any actual formal transfer by bill of sale or otherwise from Newton to the corporation in payment of his stock and therefore title to the business and the property never passed from him to the corporation.

It is true, the evidence before us does not show any such formal transfer by bill of sale or otherwise, but the evidence fully warrants the conclusion that Newton received and assumed ownership of all of the shares of stock of the corporation upon its organization in consideration of title to the property thereupon passing from him to the corporation, and that the property was thereafter so treated as the property of the corporation. Manifestly under such circumstances, it is immaterial that no formal transfer of the property was evidenced by written conveyance from Newton to the corporation.

The judgment of the trial court is in all things affirmed.

MACKINTOSH, C. J., HOLCOMB, TOLMAN, and FRENCH, JJ., concur.