No. 33,030

THE STATE EXCHANGE BANK, *Appellee*, v. M. C. NAYLOR, and W. W. NAYLOR, Administrator of the Estate of E. W. NAYLOR (Revived as to M. C. NAYLOR in the name of W. W. NAYLOR, as Administrator of the Estate of M. C. NAYLOR), *Appellants*.

(62 P. 2d 887)

Opinion filed December 12, 1936.

*Stanley E. Toland,* of Iola, and *L. T. Cannon,* of Humboldt, for the appellants.

*G. H. Lamb, W. E. Hogueland, E. E. Lamb,* all of Yates Center, *L. H. Hannen* and *B. A. Kingsbury,* both of Burlington, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on two notes and the interest due thereon—the *first* for $500, dated July 5, 1932, and due in 180 days; and the *second* for $3,000, dated November 13, 1932, and due in 90 days. The makers of these notes were E. W. Naylor and M. C. Naylor, husband and wife, and the payee was the State Exchange Bank, of Yates Center, plaintiff in this action.

Plaintiff's second amended petition contained the usual recitals pertinent to an action on promissory notes, and alleged that E. W. Naylor, one of the makers, had died since its execution and that his son W. W. Naylor was the administrator of his estate. The petition also contained certain allegations touching the making of a state-

ment of the makers' financial condition which in whole or in part was stricken from the petition by order of court. Judgment for the face amounts of the notes and interest was prayed for.

The administrator's answer alleged that the *note* sued on (which one was not indicated) had been signed by E. W. Naylor for the accommodation of the bank and without consideration, and that he had signed and delivered it—

". . . with the understanding and agreement then and there made that he would not ever be called upon to pay it, and that in the course of time it would be cancelled and returned to him. That said *note* was renewed one or more times, the exact number being unknown, by this defendant under the same terms and conditions and under like promises and agreements, and at no time did said E. W. Naylor receive any consideration for the said renewal *notes* or either of them."

On her own behalf the defendant M. C. Naylor answered with a general denial and specifically denied that she had ever made, executed or delivered to plaintiff the notes sued on. She further alleged that the notes were given without her knowledge, authority or consent, and were without any consideration to her. This answer was verified.

After issues were thus joined, the deposition of the defendant M. C. Naylor was taken by her counsel. She died before the trial, but revivor was ordered, and her son W. W. Naylor was appointed and qualified as her administrator and he adopted her answer as his own.

The cause was tried before a jury. Evidence was adduced at length. The fact that both signatures on the notes were in the hand-writing of E. W. Naylor was not in dispute. The trial court directed a verdict against the administrator of E. W. Naylor's estate, and submitted to the jury the disputed issues of fact raised by the answer on behalf of M. C. Naylor and the administrator of her estate.

The jury returned a verdict in favor of the bank for the full amount prayed for.

W. W. Naylor appeals in his dual capacity of administrator of his father's estate and as administrator of his mother's estate.

Noting the objections to the judgment in the order they are argued in appellant's brief, it is first contended that the demurrer lodged against plaintiff's evidence in behalf of Mrs. M. C. Naylor's estate should have been sustained. It is confidently asserted that there was no evidence that M. C. Naylor ever received any money or other consideration on the alleged indebtedness represented by the notes,

nor was it shown that she ever paid anything on the principal or interest in respect thereto. What the evidence did show was that each of the makers, husband and wife, were the owners, individually, of certain tracts of hay land, and that the harvesting and marketing of the hay on these lands was the principal business of the husband, E. W. Naylor, for several years prior to the dates of the notes sued on. It was also shown that the principal source of income of both makers was the proceeds of the sales of hay from these lands. It was shown that the money to meet the expenses of harvesting and marketing the hay crop was usually furnished by the plaintiff, and that the amount of indebtedness represented by notes signed by E. W. Naylor on his own behalf and in behalf of his wife, varied from time to time, rising on occasion as high as $5,000 and falling as low as $2,600; and on one occasion, at the instance of the plaintiff bank, Mr. and Mrs. Naylor made and signed a financial statement as follows:

"To the State Exhange Bank, Yates Center, Kansas: For the purpose of establishing credit from time to time with you for money borrowing or otherwise, the undersigned furnishes the following statement as being true and correct statement of all my assets and liabilities on the 20th day of May, 1932, upon the faith of which statement you can rely in loaning money."

Here followed a list of assets, including lands and town property, personal property and cash, totaling $34,710 in value. Borrowed money, $3,500; estimated net worth, $27,210.

This statement was dated May 24, 1932, and was signed by M. C. Naylor personally as well as by her husband, E. W. Naylor.

The borrowed money referred to in this statement was for substantially the same indebtedness as that evidenced by the notes sued on. In her deposition Mrs. Naylor was very emphatic in her asseverations that she had never authorized her husband to sign her name to the notes, nor to any preceding notes evidencing in whole or in part the same indebtedness; and that she knew nothing about those notes; but she did admit that she signed the financial statement; that her husband managed their hay business; that she herself never paid anything for the cutting, baling, storing and handling of her hay crops; and that she knew he was accustomed to borrow money from the bank to finance the necessary expenses incidental thereto, and even that "we" (her husband and herself) had repeatedly mortgaged the crop to the bank for such purposes although she

herself had never signed those mortgages. Out of a plethora of significant excerpts from Mrs. Naylor's deposition we only take space to quote the following:

"Q. And you also knew that the money necessary to put up your hay and your husband's hay, had to be borrowed somewhere, didn't you? A. Of course I did.

. . . . . . . . . . . . . . .

"Q. But you didn't personally pay any of it, did you? . . . A. I paid as much as he did. It all went to pay the notes.

. . . . . . . . . . . . . . .

"Q. And you and your husband have been handling the hay business all that time, haven't you? That's right, isn't it, Mrs. Naylor? A. Well, supposing it is. You know it without asking me.

. . . . . . . . . . . . . . .

"Q. . . . you expected him to borrow money to put up the hay on your land just as well as his own if it was necessary for him to do it, didn't you? A. I didn't know anything about it; didn't say anything about it, and I didn't care.

"Q. You didn't do anything about it, and didn't care? A. No, I didn't care. He tended to that.

"Q. But it was all right with you for him to do that if it was necessary, wasn't it? A. I suppose it was if he wanted to."

This court holds that both impliedly and by ratification it was established that Mrs. Naylor had authorized her husband to sign her name to divers and sundry earlier notes which represented, in whole or in part, certain indebtedness incurred by her husband in her behalf as well as his own, and which was merged into the notes which were the subject matter at issue in this action. In *Fritchen v. Mueller,* 132 Kan. 491, 297 Pac. 409, it was said:

"The fact of agency does not require proof of formal appointment to establish it; it may be implied from other facts, the conduct and statements of parties, and from relevant circumstances—following *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798." (Syl. ¶ 2.)

See, also, *Waterson v. Rogers,* 21 Kan. 529; *Hilton v. Sheridan Coal Co.,* 132 Kan. 525, 297 Pac. 413; *Mountain Iron & Supply Co. v. Branson,* 134 Kan. 818, 8 P. 2d 407; 21 R. C. L. 819, 820; Id. 853, 854; 2 C. J. S. 1045 *et seq.;* Id. 1089, 1092; 2 Am. Jur. 351, 359-361.

The foregoing conclusion also disposes of the second error urged by appellant, and which was based on the admission in evidence of the notes sued on. Since it was established beyond peradventure that E. W. Naylor had authority to sign his wife's name to the notes, the verified denial that Mrs. Naylor herself had signed them was of no consequence.

Appellant's third contention is that the court erred in directing a verdict against the E. W. Naylor estate. Under this record no shadow of error appears on this point. Quite the contrary. There was, indeed, an effort to show that the indebtedness evidenced by the notes was traceable back to certain obligations of W. W. Naylor due the plaintiff in 1920. Without conceding that satisfactory evidence to that effect was adduced, it does not appear how that fact would have relieved the estate of E. W. Naylor, if he executed notes to take up his son's indebtedness, and if the notes sued on did relate back to that indebtedness of 1920. In the interval since 1920, E. W. Naylor repeatedly paid interest on his successive notes in the bank, and the amount of his indebtedness represented by such notes varied upward and downward from time to time. So even if the original indebtedness in 1920 had been as contended for by appellant, the estate of E. W. Naylor would now be bound absolutely. (*Home State Bank v. DeWitt*, 121 Kan. 29, 30, 31, 245 Pac. 1036.)

Error is next assigned on the instructions given and refused. This relates generally to appellant's interpretation of the evidence—that it was insufficient to prove consideration passing to M. C. Naylor for the notes which bore her signature. As we have seen, however, such consideration was abundantly proved, and the instructions which the court did give adequately covered the pertinent law to the facts developed in the trial.

Some further criticisms of the judgment appear in the brief of appellant; these have been considered, but they suggest nothing of sufficient gravity to affect the general result; nor do they warrant further discussion.

The judgment is affirmed.