(No. 6481. February 11, 1938.)

COLORADO MILLING AND ELEVATOR CO., a Corporation, Doing Business Under the Firm Name of and at the PARMA ELEVATOR, Respondent, v. A. H. PROCTOR, Appellant.

[76 Pac. (2d) 438.]

Cleve Groome, for Appellant.

S. Ben Dunlap, for Respondent.

BUDGE, J.—Respondent instituted this action for the collection of a promissory note in the face amount of $1,021.92, executed by appellant to "Parma Elevator," and alleged that respondent was doing business at Parma, Idaho, under the name of "Parma Elevator." Appellant's demurrer, considered more fully hereafter, was overruled and appellant answered. Execution of the note was admitted, but that it was executed for a good and valid consideration was denied. For further defense appellant alleged that in August, 1930, he delivered to respondent 3,898 bushels of first grade Federation wheat at the then prevailing market value, namely $1.25 per hundred, and that he had been credited at the rate of only 65 cents per hundred, and further, that after delivery of the 1930 wheat crop respondent was actually indebted to

appellant on the wheat delivered, the amount delivered more than satisfying respondent's demands against appellant. The jury before which the action was tried found for respondent and against appellant in the sum of $510.96, upon which verdict judgment was entered for such amount, plus costs and attorney's fees, totaling $756.61, whereupon this appeal was taken from the judgment and from an order overruling appellant's motion for a new trial.

Appellant's first assignment of error is to the effect that the court erred in overruling the demurrer to the amended complaint, for the reason that a corporation may not do business under an assumed or trade name in this state. The note sued upon by respondent was made payable to "Parma Elevator." Respondent alleged that it was doing business at Parma, Idaho, under the name of "Parma Elevator." The corporate existence of respondent Colorado Milling and Elevator Co., and that it was qualified to do business in the state were admitted by stipulation. The facts resolve the question to be decided principally into whether a corporation may contract in an assumed or trade name or a name acquired by user or reputation, in the absence of a statute prohibiting it from doing so, no law of this state having been found prohibiting a corporation from transacting business or contracting under an assumed or trade name. Likewise, it appears that there is no statute specifically authorizing a corporation to adopt or use an assumed or a trade name, Title 52, Chapter 5, relating to "assumed business names" having no application to corporations duly organized under the laws of this state, or to any corporation organized under the laws of any other state, and lawfully doing business in this state, I. C. A., sec. 52–504, providing:

"This chapter shall in no way affect or apply to any corporation, duly organized under the laws of this state or to any corporation organized under the laws of another state and lawfully doing business in this state, . . . . "

The foregoing conclusion is supported by *National Oil Works v. Korn Brothers*, 164 La. 800, 114 So. 659, so construing a similar statute.

■ In Fletcher Cyclopedia, Corporations, Permanent Edition, vol. 6, p. 87, sec. 2442, the general rule that a corporation may assume a name, unless there is some statutory provision to the contrary, is stated as follows:

"A corporation when it comes into existence, acquires a legal name by which it is known and identified, and by which in general it contracts and acts. Strictly speaking, this name is the only legal name which it can have, unless, of course, such name is subsequently changed by the state or under authority from the state. It seems quite well established, however, that in the absence of statutory prohibition a corporation may have and be known to the public by more than one name, and that, in addition to the name given it by its charter, it may acquire other names by user or reputation. Of course it cannot by usage or prescription acquire a legal name other than that conferred upon it by law, and 'a corporation cannot, except as authorized by law, change its own name, either directly or by user.' It cannot be said that a corporation has a right, not only to the actual name given to it by its articles of incorporation, but also to a translation of such name into a foreign language.

"This legal name and title which the law confers upon a corporation is the only one which it should use. It may not, without authority of law express or implied, use any other name, particularly where the statute directly prohibits corporations from transacting any business under any other or different name than that conferred upon them by their articles of incorporation. But however desirable it may be that a corporation act and contract in its true legal name, this is not always done. In written instruments, pleadings, process, etc., misdescriptions very often creep into the corporate name with what effect will be seen later, and a corporation may contract, acquire rights or incur obligations in a fictitious or trade name. Like any individual, a corporation may assume a name other than its legal name and carry on business in such assumed name, but in order to apply this doctrine, incorporation by some name must be established. If a note or deed is executed by a corporation under an assumed name, it is just as much bound as if it had used its proper name, and

the same is true of any other contract. A contract entered into by or with a corporation under an assumed name may be enforced by either of the parties, if the identity of the corporation is established by the proof.''

Authorities supporting the proposition are: *McClain v. Georgian Co.*, 17 Ga. App. 648, 87 S. E. 1090; *Golden's Foundry & Machine Co. v. Wight*, 35 Ga. App. 85, 132 S. E. 138; *Moon Motor-Car Co. v. Savannah Motor-Car Co.*, 41 Ga. App. 231, 152 S. E. 611; *President etc. of Mount Palatine Academy v. Kleinschnitz*, 28 Ill. 133; *Butler Mfg. Co. v. Elliott & Cox*, 211 Iowa, 1068, 233 N. W. 669; *National Oil Works v. Korn Bros, supra; Mail & Express Co. v. Parker Axles, Inc.*, 204 App. Div. 327, 198 N. Y. Supp. 20; *William Gilligan Co. v. Casey*, 205 Mass. 26, 91 N. E. 124; *Curtin v. Salomon*, 80 Cal. App. 470, 251 Pac. 237; *Brotherhood State Bank of Spokane v. Chapman*, 145 Wash. 214, 259 Pac. 391, 56 A. L. R. 447, and annotation of authorities, 56 A. L. R. 450.

 Appellant's contention, set forth in assignment 2, that error was committed in admitting respondent's exhibit A, a certified copy of respondent's certificate of assumed name on file with the county recorder is disposed of by the foregoing conclusion. While possibly immaterial, the admission of such exhibit was not prejudicial to appellant.

 It is next urged that respondent's exhibit B, the note, was improperly admitted in evidence, no consideration for the instrument having been shown and the consideration having been put in issue, and for the further reason that the note was not given to appellant but to the Parma Elevator. There was evidence that the identity of the Parma Elevator and appellant were one and the same, which fact may be established by the ordinary methods of proof. (*Marmet Co. v. Archibald*, 37 W. Va. 778, 17 S. E. 299; *Grafton Grocery Co. v. Home Brewing Co. of Grafton*, 60 W. Va. 281, 54 S. E. 349.)

A promissory note imports consideration. I. C. A., sec. 26–201, provides:

''Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every per-

son whose signature appears thereon to have become a party thereto for value."

(*Bow v. R. & N. Oil Gas Co.*, 43 Ida. 80, 251 Pac. 295; *Fruitland State Bank v. Lauer*, 34 Ida. 272, 200 Pac. 127; *McCarthy v. Harrop*, 51 Ida. 107, 3 Pac. (2d) 458.) The burden of showing lack of consideration to support a negotiable instrument lies with the one seeking to avoid it. (*McCarthy v. Harrop, supra.*)

██ Appellant contends that the court improperly refused him permission to cross-question the witness Walmsley about the grain delivered (Assignment IV), and to cross-examine him on the consideration for the note sued on (Assignment V). At the time objections were interposed as to such cross-examination, such matters had not been touched upon or gone into upon the direct examination of the witness, and error may not thus be predicated upon the exclusion of such testimony on cross-examination. (*Erickson v. Edward Rutledge T. Co.*, 34 Ida. 754, 203 Pac. 1078; *State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540.) It also appears that this witness later, during the trial, was thoroughly cross-examined with reference to the grain delivered by appellant and with reference to the consideration for the note. Any possible error committed in theretofore excluding such testimony was immaterial and not prejudicial. (*Lewis v. Utah Const. Co.*, 10 Ida. 214, 77 Pac. 336; *Morrow v. Matthew*, 10 Ida. 423, 79 Pac. 196; *Towne v. Northwestern Mut. Life Ins. Co.*, 58 Ida. 83, 70 Pac. (2d) 364.)

█ Appellant contends that the court erred in entering judgment for respondent (Assignment VI) and in overruling his motion for new trial (Assignment VII) because there is no evidence to support the judgment, and urges that appellant either owed the entire amount of the note or no part of it, the defense being the entire lack of consideration. Appellant's argument and theory that the note was entirely without consideration is based upon the proposition that he delivered to respondent a certain amount of wheat under the agreement that he was to receive therefor the then market value, alleged to be $1.25 per hundred, and calculating upon such basis, deducting the advances made, and merchandise

purchased, no sum of money was due respondent. The record discloses that many possible calculations could have been made by the jury in arriving at the amount of their verdict, due to the entire lack of agreement between appellant and respondent as to their agreement, amount of wheat delivered, and the market price or the price actually credited. For example the evidence discloses a conflict as to the amount of wheat delivered, whether it was delivered for storage or sold, what price was agreed to be and what price was actually paid for it, and appellant's own testimony discloses that the market value of wheat at no time was more than $1.05 per hundred. This court has no way of determining the manner in which the jury arrived at its figure. There is however ample evidence to support a judgment for respondent, and there is nothing to disclose that the jury was not justified in arriving at a verdict for an amount less than that appearing on the face of the note. Certainly appellant cannot complain that the judgment against him was for a less amount than it should have been. (*Frederick v. Brainard,* 32 Ida. 296, 182 Pac. 351.)

Appellant's remaining assignments of error relate to the sufficiency of the instructions given, and the court's refusal to give eight requested instructions. A discussion thereof would appear to serve no useful purpose inasmuch as a careful examination of the instructions given discloses they are not unfavorable to appellant and correctly and sufficiently state the law to be applied to the evidence adduced, and cover, in their effect, the matter requested in appellant's offered instructions.

The judgment is affirmed. Costs awarded to respondent.

Holden, C. J., and Morgan, Ailshie and Givens, JJ., concur.