THE FALCO CORPORATION v. ALVIN S. HOOD, D/B/A HOOD'S TEXACO
SERVICE

No. 7010SC34

(Filed 6 May 1970)

1. **Landlord and Tenant § 5;    Sales § 6—    lease of equipment — instructions — implied warranty of fitness**

   In this action for breach of an agreement for the lease of car washing equipment which had been selected by defendant lessee and purchased by plaintiff lessor for lease to defendant, the trial court erred in instructing the jury that since there was no express warranty, the law would imply a warranty that the leased equipment was fit for the purpose for which it was leased, where the lease provided that there were no warranties from the lessor to the lessee, and under the terms of the lease it is conclusively presumed that the equipment and installation thereof were satisfactory to defendant lessee since he gave the lessor no notice of defects within the time required by the lease.

2. **Landlord and Tenant § 19—    breach of lease agreement — damages**

   In this action for breach of a lease agreement, the trial court erred in limiting recovery by plaintiff to an amount which was less than the difference between what lessee agreed to pay and what he had actually paid under the lease.

APPEAL by plaintiff from *Bone, E.J.,* August 1969 Civil Session of WAKE County Superior Court.

This action was instituted to recover an alleged indebtedness because of default in monthly payments due under a lease agreement. The pleadings and evidence tend to show that the plaintiff (Falco) is in the business of financing equipment purchases. The defendant (Hood) in April 1967 decided to install automobile washing equipment in connection with an automobile service station which he was operating in New Bern, North Carolina. The defendant went to Goldsboro, North Carolina, and examined automobile washing equipment which was installed and in use in that location. Hood then communicated with Carolina Specialty Sales (Specialty) which was engaged in the business of selling automobile washing equipment manufactured by Valley Die Cast Corporation of Detroit, Michigan (Valley Die). Thereafter, Hood agreed with Specialty to acquire a Model 501 manufactured by Valley Die. In order to finance this purchase, Hood submitted an application to Falco. It was contemplated that if Hood's credit rating was satisfactory, Falco would purchase the equipment that Hood had selected and the title to the equipment would be in Falco. The equipment would be sent direct to Hood and after it had been satisfactorily installed and accepted by Hood, Falco

would then pay for the equipment and take title thereto, and in turn, would lease the equipment to Hood.

This arrangement was carried out. Falco approved the credit rating of Hood. The equipment selected by Hood from Specialty and manufactured by Valley Die was sent direct to Hood and installed at the place of business designated by Hood. Valley Die issued its manufacturer's warranty pertaining to the equipment direct to Hood. Hood executed a certificate indicating his acceptance of the equipment and his approval of the installation thereof as a part of his lease agreement with Falco. Falco then paid for the equipment. After the equipment had been installed, it was ascertained by Hood that Specialty had installed a Model 700 rather than the Model 501 which had been originally contemplated. Upon discovery of this mistake, Hood agreed with Specialty to accept the Model 700 which was a less expensive model. Specialty then refunded to Falco the difference in the price of the two models, and Falco in turn gave Hood credit on the lease agreement. Thereafter, Hood executed and delivered a new acceptance agreement showing his acceptance and satisfaction with Model 700, and likewise in turn, Hood and Falco executed a new lease agreement.

The equipment proved to be unsatisfactory to Hood, and from the very beginning was out of operation almost all the time. After making payments for several months, Hood discontinued paying Falco in accordance with the terms of the lease agreement. Falco instituted this action. Hood filed an answer denying all the material allegations of the complaint, but did admit the execution of the lease agreement. Hood also filed a counterclaim asserting a total failure of consideration and sought to recover the payments which had theretofore been made to Falco.

One issue was submitted to the jury as to what amount, if any, Falco was entitled to recover of Hood. The jury answered this issue, "Nothing."

*Coley and Clement by H. D. Coley, Jr., and Fleming, Robinson and Bradshaw by Russell M. Robinson, II, for plaintiff appellant.*

*Dunn and Dunn by Raymond E. Dunn for defendant appellee.*

CAMPBELL, J.

[1]    Falco assigns as error the charge of the trial judge to the jury as follows:

"Now where there is no express warranty the law implies a war-

ranty and the evidence in this case is to the effect that there was not an expressed warranty made by the Falco Corporation when the property was leased to the defendant Hood and, therefore, I instruct you that the law would imply that there was a warranty to the effect that the car wash equipment which was being leased by Falco to the defendant Hood was reasonably fit for the use and purpose for which it was being leased and which was in the contemplation of both lessor and lessee at the time of the execution of the contract."

We are of the opinion that this exception is well taken.

The evidence in this case reveals that Hood selected the automobile washing equipment; that Falco never saw this equipment until after it had been delivered to Hood and installed under Hood's supervision; that Hood represented to Falco that the equipment was satisfactory and met with the approval of Hood. The manufacturer's warranty was sent to and delivered directly to Hood. The contractual agreement between Falco and Hood provided:

"*TITLE AND SUITABILITY*. The Lessor covenants that is is the lawful owner of the Equipment and that Lessee shall peaceably and quietly hold, enjoy, possess and use the Equipment during the term of this lease; provided, however, that the Equipment has been ordered from a supplier selected by Lessee, and Lessor shall not be liable for specific performance of this lease or for damages if, for any reason, supplier delays or fails to fill the order. No warranties, expressed or implied, representations, promises or statements have been made by the Lessor unless endorsed hereon in writing. The Lessee agrees that each Item of Equipment and the installation thereof shall be conclusively deemed approved by and satisfactory to Lessee unless Lessee shall have given Lessor written notice to the contrary not later than five days after the effective date hereof. Lessee agrees that Lessor shall not be liable for any loss, damages or expense caused by the Equipment or the use, maintenance, servicing thereof, or for the loss of use thereof, or for any loss of business or damage whatsoever and howsoever caused."

Under the terms of this agreement, the parties thereto specifically provided that there were no warranties from Falco to Hood.

". . . When competent parties contract at arms length upon a lawful subject, as to them the contract is the law of their case." *Suits v. Insurance Co.*, 249 N.C. 383, 386, 106 S.E. 2d 579 (1958).

In addition to everything else, the contractual agreement provided in the provisions above set out that Hood should have five days within which to give written notice of any defects in the equipment, and if such notice should not be given, the equipment and installation thereof should be conclusively deemed approved by Hood and satisfactory to Hood.

Hood not only admitted the execution of the lease agreement, but raised no question as to the authenticity thereof and asserted no claim that it failed to express the agreement he had entered into with Falco.

> "Where a lease of business equipment makes no provision that the lessee might recover damages because of any defect in the equipment at the time of delivery and that the lessee should give the lessor written notice of any defect within 5 days or it would be conclusively presumed that the equipment was delivered in good repair, the lessee is not entitled to damages or replacement as against the lessor for an asserted defect or misrepresentation as to the condition of the machinery at the time of delivery, no notice of any defect having been given the lessor as required by the instrument." 5 Strong, N.C. Index 2d, Landlord and Tenant, § 5, p. 156.

This case is similar to the case of *Leasing Corp. v. Hall*, 264 N.C. 110, 141 S.E. 2d 30 (1965). Likewise, see the annotation in 68 A.L.R. 2d 850 at 859, § 5, *et seq.*

[2]    The plaintiff also assigns as error the charge of the trial court on the issue of damages wherein the trial judge limited the recovery to $8,197.96. This limitation on the amount of damages is contrary to the lease agreement entered into between Hood and Falco.

> "In a suit for damages arising out of a breach of contract the party injured by the breach is entitled to 'full compensation for the loss and to be placed as near as may be in the position which he would have occupied had the contract not been breached. . . .'" *Construction Co. v. Crain and Denbo, Inc.,* 256 N.C. 110, 123, 123 S.E. 2d 590 (1962).

> ". . . 'Generally speaking, the amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach. . . ." *Troitino v. Goodman,* 225 N.C. 406, 412, 35 S.E. 2d 277 (1945).

The above stated principles of law, when coupled with the express terms of the contractual agreement entered into between Falco

and Hood which sets out that upon default the entire amount shall be due, clearly indicates that the damages to which Falco is entitled are the differences between what Hood agreed to pay as rent and what he actually paid.

New trial.

PARKER and HEDRICK, JJ., concur.