526 P.2d 828

TRANSPORTATION EQUIPMENT RENT-
ALS, INC., Plaintiff-Respondent,

v.

Mike IVIE, Defendant-Appellant.

No. 11441.

Supreme Court of Idaho.

Sept. 16, 1974.

Stephan, Balleisen & Slavin, Twin Falls, for defendant-appellant.

Cecil D. Hobdey, James & Hobdey, Gooding, for plaintiff-respondent.

McQUADE, Justice.

This action involves a dispute over the character of an agreement entered into by the plaintiff respondent, Transportation Equipment Rentals, Inc., and the defendant-appellant, Mike Ivie. The appellant is engaged in the construction business, and in 1965, he was in need of a scraper. The appellant and respondent entered into negotiations for the rental by the respondent to the appellant of a new Caterpillar DW-20 Scraper. The scraper was purchased for $26,000, and the appellant paid $3,000 of the total purchase price. On April 26, 1965, the parties entered into a "Lease Agreement" providing for the rental of the scraper to the appellant for 60 months in return for monthly payments by the appellant. The appellant made regular monthly payments in accordance with the agreement until September, 1967, when he sought to terminate the agreement. The agreement provided that upon its termination the scraper would be sold for the highest cash offer. The proceeds of this sale were to be added to the accrued monthly depreciation reserve which was a designated portion of the appellant's monthly payment. If the total were less. than the original value of the scraper which was set at $23,000, the difference was to be paid to the respondent, but if the total was in excess $23,000 then the excess was to be paid to the appellant. The re-

spondent received an offer of $6,000 for the scraper and the appellant's accrued depreciation reserve totaled $11,040 making a deficiency of $5,960 owed by the appellant to the respondent under the terms of the agreement.

The appellant refused to pay the $5,960 deficiency and the respondent filed an action seeking payment of the deficiency and reasonable attorney's fees. The action was submitted to the trial court for decision pursuant to a pre-trial order and stipulation of the parties and pursuant to an order of the trial court concerning the admissibility of evidence. Findings of fact were entered by the trial court and a judgment was entered for the respondent for the deficiency sum of $5,960 and the sum of $1,986.66 for attorney's fees and costs. This appeal is from the judgment.

■ The appellant contends that the trial court erred in failing to find that the agreement was a security device in which usurious interest was charged. The trial court did not reach a conclusion as to the character of the "Lease Agreement". The classification of the agreement as a "Rental Agreement" or "Security Device" is not determinative as to the question of whether its provisions charged usurious interest.

It has been established that to constitute usury there must be excessive interest or compensation on either a loan of money or forbearance or extension of time of payment on an existing debt.[1] On its face, the "Lease Agreement" does not appear to be a loan of money or forbearance on an existing debt, but it has been held that the courts must consider all the facts and circumstances surrounding an agreement to determine the real nature of the transaction.[2] "We will not hesitate to pierce a device or form which is designed to circumvent the usury laws in order to reach the economic substance of a transaction."[3]

■ Upon termination of the "Lease Agreement" either at its stated expiration date of 60 months or upon the appellant's notice of termination, there is no provision for title of the scraper to pass to the appellant. If the ownership of the scraper does not pass to the appellant, it cannot be said that the Lease Agreement was actually a loan to the appellant for purchase of the scraper. The appellant argues that although title does not automatically pass to him at termination of the agreement, he will be forced to purchase title to the scraper because of the build-up of his interest in the scraper by the accumulation of the depreciation reserve payments. The appellant's allegation that he will be economically coerced into purchasing the scraper at termination of the agreement is without merit. The agreement provides that the scraper is to be sold at the highest cash offer obtainable. Since any deficiency under the "Lease Agreement" is based on the difference of the original value and the sum of the accumulated depreciation reserve and the sale price of the scraper, the appellant would of course want a high cash offer to be received for the scraper. If the appellant believed that the cash offers were below the market value of the scraper, he might decide to purchase it and sell it at a later date to protect himself from being charged an unwarranted deficiency, but the protection in the agreement that he be notified of the cash offers inures to his benefit and does not convert the agreement into a contract for the purchase of the scraper. Since the title to the scraper does not pass to the appellant at the termination of the contract, the agreement cannot be characterized as a security

1. Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966); Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738 (1955).

2. Meridian Bowling Lanes, Inc. v. Brown, supra note 1; Freedman v. Hendershott,

supra note 1; Milo Theater Corporation v. National Theater Supply, 71 Idaho 435, 233 P.2d 425 (1951).

3. Wood v. Sadler, 93 Idaho 552, 555, 468 P.2d 42, 45 (1970).

device or contract for the purchase of the scraper.

█ The appellant bore the burden of providing that the "Lease Agreement" was a purchase agreement that involved excessive interest.[4] He did not sustain that burden. The judgment is affirmed.

Costs to respondents.

SHEPARD, C. J., and DONALDSON, J., concur.

McFADDEN, J., sat but did not participate.

BAKES, Justice (dissenting):

In my opinion the "lease agreement" involved in this transaction is in reality an artfully disguised financing arrangement rather than a lease as the majority have held. Some additional facts will help the analysis of this transaction.

In April of 1965, the defendant Ivie was about to purchase the piece of equipment in question in his own name from the Stevens Motor Company of Hailey, Idaho, for $26,000. At the suggestion of both the Stevens Motor Company and the plaintiff, Transportation Equipment Rentals, Inc., he decided to "rent" the equipment through the plaintiff. The plaintiff's proposal was that the defendant Ivie would pay $3,000 of the $26,000 purchase price to the Stevens Motor Company, and the plaintiff Transportation Equipment Rentals, Inc., would pay the balance, i. e., $23,000. Plaintiff would receive the title to the equipment from the Stevens Motor Company and in turn would "lease' it to the defendant Ivie under the "lease agreement" in question. The lease called for sixty monthly payments of $506 each. The agreement, which was a printed form, had a typed modification which provided that:

"In the event the prime interest rate shall be increased or decreased by The Bank of America N.T. & S.A., of San Francisco, the Lessor shall increase or decrease the monthly rental by 1/100th of 1% (one-one hundreth of one percent) of the original value for each 1/4 of 1% increase or decrease in the prime interest rate. Such increase or decrease in rental to be effective on the first day of the month following such increase or decrease in the prime interest."

Of each monthly payment, $345 was to be credited to a depreciation reserve account. At the termination of the lease the equipment was to be sold, and to the extent that the amount credited to the depreciation reserve did not total the $23,000 paid out by the lessor originally, the amount received by the sale of the equipment at the end of the lease would be applied to make up the difference. If the equipment sold for more than the difference between the depreciation reserve and the $23,000 original cost to the lessor, that excess was to be returned to the lessee. However, if the amount received on the sale of the equipment was not sufficient to make up the difference between the depreciation reserve and the amount originally invested by the lessor, a deficiency would be entered against the lessee. That was the situation in this case, and it resulted in a deficiency judgment being entered against the defendant for $5,960.

It is evident from the foregoing that the entire economic risk in the equipment regarding absolescence, wear and tear, or other loss ordinarily associated with ownership was with the defendant Ivie. The lessor under the lease would receive back the original $23,000 investment, together with what appears to be a usurious amount of interest which under the lease would fluctuate up and down with the market, but in this case it only fluctuated upward. The name which the parties attach to their financial transaction is not controlling in determining whether or not it is a true lease or a financing arrangement. Gilmore, Security Interest in Personal Prop-

---

4. Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966); Olson v. Caufield, 32 Idaho 308, 182 P. 527 (1919).

erty, Vol. I, § 3.4–3.8. In my opinion it was a hybrid transaction which bore more of the characteristics of a financing arrangement than an ownership-lease arrangement. Thus it is subject to the usury laws.

I would reverse the judgment of the trial court and remand to determine the extent of the usurious interest reserved by this disguised financing arrangement.