653 P.2d 791

**W.L. SCOTT, INC. dba L.S. Leasing, Plaintiff-Respondent, Cross-Appellant.**

v.

**MADRAS AEROTECH, INC. dba Treasure Valley Aviation & Company dba Valley Aviation, and Larry Dowers, an individual, Defendants-Appellants, Cross-Respondents.**

No. 13444.

Supreme Court of Idaho.

Oct. 15, 1982.

Alan G. Lance, of Foley & Lance, Meridian, attorney for defendants-appellants.

William J. Russell, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, attorney for plaintiff-respondent.

DONALDSON, Justice.

Appeal is brought from a final judgment rendered in favor of the plaintiff corporation in a civil action based upon the breach of a lease agreement.

The trial court found as fact that on December 14, 1976, the corporate defendant entered into a lease agreement with the corporate plaintiff. The agreement provided for the lease of a new Sharp 2600 System computer to the corporate defendant and by its terms required monthly payments. The computer was purchased by the plaintiff from the local Sharp dealer specifically for this lease at a cost of $14,745.00. Performance of the agreement by the corporate defendant was guaranteed by the individual defendant, Mr. Larry Dowers. The individual defendant executed a "Guaranty Agreement" dated January 17, 1977, and thereafter the plaintiff paid the dealer for the computer which had been delivered during the interim between the execution of the two agreements. On January 6, 1977, the plaintiff filed a financing statement on the computer with the Idaho Secretary of State pursuant to the Uniform Commercial Code. Monthly payments were made in accordance with the lease until

September 1977 when a dispute arose. The plaintiff notified the local Madras Aerotech office and Mr. Larry Dowers that the lease was in default and requested payment. When no payments were made, the plaintiff with the assistance of the Sharp dealer peacefully repossessed the computer. The plaintiff attempted to sell the computer locally by contacting two potential buyers and by running local newspaper advertisements. These attempts proved futile and the computer was sold to the original supplier for $3,000.00.

L.S. Leasing then commenced suit against the defendants to collect a deficiency judgment based upon the lease and guaranty agreements. During the discovery period prior to trial, the defendants made a motion for summary judgment accompanied by affidavits which alleged that L.S. Leasing was not a legally recognized corporate entity in Idaho and thus had no standing to institute suit in the Idaho courts. Before this motion was heard, plaintiff filed a motion to amend its complaint which together with the motion for summary judgment was heard by the trial judge at a consolidated hearing. The trial judge heard argument on the plaintiff's motion first and granted leave to amend the complaint to reflect that L.S. Leasing is a d/b/a for W.L. Scott, Inc., an Idaho corporation. Then the trial judge heard argument on the motion for summary judgment.

In the memorandum decision which incorporated an order denying the motion for summary judgment, the trial judge rejected defendants' argument that a corporation cannot do business under an assumed name. *Colorado Milling and Elevator Co. v. Proctor,* 58 Idaho 578, 76 P.2d 438 (1938). Further, the trial judge rejected defendants' arguments that the lease was void as a matter of law for lack of mutuality and for being usurious.

The matter was then tried to the trial court. Among the trial court's conclusions of law, were the following: (1) the lease agreement was a lease and not governed by article 9 of the Uniform Commercial Code, (2) the agreement was not usurious, (3) the computer after repossession was not sold in a commercially reasonable manner, (4) there existed sufficient consideration to support the guaranty agreement, (5) the plaintiff satisfied the requirements of pleading and proving satisfaction of conditions precedent, (6) the plaintiff was entitled to a deficiency judgment, and (7) neither party was entitled to costs or attorney fees. Judgment was entered in favor of the plaintiff lessor. The defendants appeal and the plaintiff cross-appeals.

## I.

The first issue we consider is whether the trial court erred by allowing the plaintiff to amend its complaint prior to hearing argument on defendants' motion for summary judgment.

The original complaint which was filed January 11, 1978, named the plaintiff as "L.S. Leasing, Inc." The defendants in their original answer did not raise by specific negative averment that L.S. Leasing, Inc. lacked the legal capacity to enforce a contract in the Idaho courts. *Dairy Equipment Co. of Utah v. Boehme,* 92 Idaho 301, 442 P.2d 437 (1968); I.R.C.P. 9(a). However, by an amended answer and counterclaim filed with leave of the Court on February 2, 1979, the defendant sufficiently raised this issue. Thereafter on February 9, 1979, defendants filed a motion for summary judgment based on grounds that plaintiff lacked standing to bring suit. The plaintiff then filed on February 13, 1979, a motion to amend its complaint to reflect that W.L. Scott, Inc. was doing business as L.S. Leasing. The trial court exercised its discretion in first hearing and permitting the amendment which reflected W.L. Scott, Inc., d/b/a L.S. Leasing as the plaintiff before considering defendants' motion for summary judgment.

A trial court is vested with the sound discretion to decide whether to permit the amendment of a pleading, *Idaho First National Bank v. Wells,* 100 Idaho 256, 596 P.2d 429 (1979); *Smith v. City of Preston,* 99 Idaho 618, 586 P.2d 1062 (1978), and in furtherance of justice between the par-

ties may permit amendment. *See Smith v. Shinn,* 82 Idaho 141, 350 P.2d 348 (1960). In challenging a decision of the trial court which granted permission to amend a pleading, the challenger must clearly demonstrate an abuse of discretion, *see, e.g., Lisher v. Krasselt,* 96 Idaho 854, 538 P.2d 783 (1975); *Dairy Equipment Co. of Utah v. Boehme, supra; Rankin v. Caldwell,* 15 Idaho 625, 99 P. 108 (1908), which has not, here, been shown. We hold that the trial court did not err in hearing and granting the motion to amend before hearing the motion for summary judgment.

■ Appellants argue that the denial of their motion for summary judgment was error. This argument upon review has no merit. The amendment of the complaint supersedes the original complaint and all subsequent proceedings are based upon the amended complaint. *E.g., Billings v. Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P.2d 224 (1964). In the absence of statutory prohibition, a corporation may conduct business and enter into a valid contract under an assumed name. However, to enforce that contract the corporation should bring the suit under its corporate name. In a suit on the contract brought under the assumed name, if the affirmative defense is raised and established either during proceedings on a motion for summary judgment or at trial which challenges the legal status of the plaintiff, the defendant will prevail unless the corporation such as here is granted leave to amend its complaint. The defendants presented affidavits in support of their motion which related to the legal status of L.S. Leasing, Inc. and not of W.L. Scott, Inc.[1] Therefore, we affirm the trial court's denial of the defendants' motion for summary judgment.

## II.

Appellants next argue that the trial court erred by denying their motion for dismissal at the close of plaintiff's case which was based on the alleged failure of the plaintiff to plead and prove satisfaction of conditions precedent. The record provides little support for appellants' position.

■ Appellants contend that the language of the lease agreement raised a question of a condition precedent. This language was:

"Lessee requests Lessor to purchase the above-described Equipment from Supplier and to lease said equipment to Lessee upon the terms and conditions of this lease; and upon written acceptance hereof signed at the Lessor's office by an authorized employee Lessor agrees to lease Equipment. The undersigned agree to all the terms and conditions of this lease as set forth above and on the reverse side hereof, and on the application initially attached to this form."

Appellants argue that "written acceptance ... signed at the Lessor's office by an authorized employee" was a condition precedent. While the trial court did not decide if this was a condition precedent, its finding that if it were a condition precedent that plaintiff's general averment in paragraph II of its amended complaint satisfied the requirement of I.R.C.P. 9(c)[2] has not been shown to be error. The record reveals that the lease agreement was introduced into evidence without objection after Roy Farrer authenticated the document and testified to his signature thereon. The trial court determined that "[a]cceptance of the lease agreement appears unequivocally on the face of the document with the signature of Roy Farrer." Thus, it is apparent that the trial court determined that an effective acceptance was proven. The appellants have failed to demonstrate that these findings were clearly erroneous. I.R.C.P. 52(a). Consequently we reject their argument.

---

1. A corporation is exempt from the filing requirements of Title 53, Ch. 5, I.C. which concerns "assumed business names." I.C. § 53–504; *see Colorado Milling and Elevator Co. v. Proctor,* 58 Idaho 578, 76 P.2d 438 (1938).

2. I.R.C.P. 9(c) provides:

"Conditions precedent.—In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

### III.

We next consider appellants' arguments that the lease agreement was intended as a security device, that provisions of the Uniform Commercial Code, I.C. §§ 28–9–101 to –507, were thus applicable with regard to notice requirements, good faith, commercial reasonableness, waivability of notice and procedural and substantive determinations, and that the agreement was usurious.

We uphold the trial court in its conclusion of law that the lease agreement at issue was not a security interest subject to article 9 of the Uniform Commercial Code. The trial court properly analyzed the lease agreement upon the facts of the case. *Whitworth v. Krueger,* 98 Idaho 65, 558 P.2d 1026 (1976); I.C. § 28–1–201(37). We find no error in the trial court's statements that:

"There is no provision in the lease giving the option to purchase the computer for nominal consideration at the end of the term. The lease expressly states that 'At the expiration of this lease... Lessee, it [sic] its expense shall return equipment in good working condition and repair by delivering it packed and ready for shipment, to such place or on board such carrier as Lessor may specify.' Furthermore, from the testimony of Roy Farrer, he did not discuss with Frank Dower what would happen to the equipment at the end of the lease term. Dower produced no evidence of an oral agreement to purchase the computer at the end of the lease term. Farrer further established that in practice, what happened to equipment at the end of lease term depended on the particular circumstances of the parties. In many cases, the equipment is returned to the leasing corporation. In other cases, the lessee still needs the equipment, so the equipment is released to the lessor under a new contract. Sometimes the lessee might purchase the equipment, not at a predetermined price but on a fair market value basis. Farrer established that in a recent survey made in preparation for another trial, out of the first 200 equipment leases on photocopy machines, only 7 had thus far exercised an option to purchase.

. . . .

"Looking at all the facts of this case, it is clear that although the lease agreement does contain some attributes of an installment sales contract, there was no oral or written option to purchase the equipment, and title did not pass to the lessee at the end of the term. Since no other relevant evidence was presented demonstrating that the parties intended the transaction to be anything other than lease, this court concludes that the agreement is a lease and Article 9 of the Code is not applicable."

Additional support for the trial court's holding can be gleaned from *Eimco Corporation v. Sims,* 100 Idaho 390, 394, 598 P.2d 538, 542 (1979), wherein we recognized that "[i]t is well settled that an equity in the lessee is one of the distinctive characteristics of a lease intended for security." Here, the trial court found that "the lessee did not acquire any equity in the equipment." The trial court was also correct in holding that the filing of a financing statement was not determinative.[3] Because we conclude

---

**3.** An examination of the financing statement reveals that the following language appears therein: "This property is owned by L.S. Leasing and is being leased to debtor under lease # _____[.] The secured party is not a seller or purchase money lender of the collateral."

At the time the lease agreement was executed, the Uniform Commercial Code as enacted in Idaho was silent as to the effect of the filing of a financing statement vis-a-vis a lease. In 1979, the legislature enacted, as I.C. § 28–9–407A, a provision which explicitly states: "filing [of a financing statement] shall not of itself be a factor in determining whether or not the . . . lease is intended as security, section 28–1–201(37)." Thus, our holding comports with this new legislation.

Further support can be found in paragraph 25 of the lease agreement:

"25. FILING OR RECORDING. The parties hereto do not intend this lease to be and it is not a conditional sales contract, chattel mortgage or security agreement within the meaning of any statute requiring filing or recordation thereof or of any notice or statement with respect thereto. Nevertheless, this lease may be so filed of record to give

that the trial court properly held the lease agreement at issue to be a lease, we also agree that no issue of usury is present. *Transportation Equipment Rentals, Inc. v. Ivie,* 96 Idaho 223, 526 P.2d 828 (1974).

## IV.

Appellant Larry Dowers tries to raise the argument on appeal that the guaranty agreement fails for want of consideration. Under Idaho law a presumption arises from a written instrument that consideration has been given. *Lewis v. Fletcher,* 101 Idaho 530, 617 P.2d 834 (1980); I.C. § 29–103. Once this presumption arises, the party seeking to assert the affirmative defense of lack of consideration must establish that defense by a preponderance of the evidence. *See Lewis v. Fletcher, supra; Rosenberry v. Clark,* 85 Idaho 317, 379 P.2d 638 (1963); I.C. § 29–104. It was necessary for appellant to introduce evidence to establish this defense. After a review of the record, we are not persuaded that the trial court erred by denying this defense.[4]

## V.

We next consider two interrelated issues. First, whether the trial court erred in finding the efforts by the lessor to sell the computer were commercially unreasonable and second, whether the trial court erred by utilizing an improper measure of damages.

The situation at hand is similar in certain respects to that which we encountered in *Industrial Leasing Corporation v. Thomason,* 96 Idaho 574, 532 P.2d 916 (1974). In that case a lessee of farm equipment breached a lease agreement before its expiration. After the breach, the equipment was made available to the lessor. We considered in that case what if any duty existed on the part of the lessor under such circumstances and what damages lessor could recover. We held that

"the lessor of personal property is not unconditionally entitled to the full amount of the rentals reserved in the lease as damages in the event of breach of the lease. If the leased property is of such a kind that the lessor may reasonably anticipate the existence of a market for its re-lease or sale, the lessor is under a duty to use 'commercially reasonable' efforts to re-lease or sell the property to mitigate damages ...." *Id.* at 578, 532 P.2d at 920 (footnote omitted).

The *Thomason* holding is applicable here. *Thomason* developed rules to provide guidance as to the duty imposed upon the lessor to mitigate. To sweep away any vestige of confusion which might exist as to the lessor's duty, we reemphasize our language in *Thomason* and state that the lessor's duty is measured by the standard of what is com-

notice to interested parties. Lessee hereby gives Lessor authority to execute and complete any such notices, including financing statements filed pursuant to the Uniform Commercial Code, in behalf of and as agent for Lessee for said purposes."

4. The trial court found that:
"[E]ven though a guaranty promise may have been made subsequent to the creation of the principal obligation, the guaranty is founded upon consideration if the promise was given as a result of the previous arrangement and the priciple [sic] obligation was induced by the guaranty. 38 Am.Jur.2d *Guaranty* § 45 (1968).
"... [T]here is evidence that the lease agreement and the guarantee agreement were treated by the parties as a single transaction. Roy Farrer established at the time the Lease Agreement was signed on December 14, 1977 he obtained assurances from

Frank· Dower that a personal guarantee would be forthcoming. Farrer also established that the guarantee was relevant to the decision to enter into the lease, and he absolutely would not have entered in to [sic] the lease, and he absolutely would not have entered into the agreement without it because with new or closely held corporations, the decision to lease is based on the individual credit of the officers or owners. The reason the guarantee agreement was signed subsequently to the lease agreement was because the lease agreement was entered into upon completion of all the necessary documents and Larry Dower was not available at the time....
"... The reliance by the plaintiff upon the promise to guarantee the lease constituted sufficient consideration in itself to support the guarantee contract ...."

mercially reasonable.[5]  *Id.  Thomason* enunciated how lessor's damages are to be ascertained.  Lessor is "to attempt to mitigate the damages sustained by the lessee's breach by re-leasing or *selling* the property *and setting off* the *amount received against the damages sustained . . . ." Id.* (Emphasis added.)  We stated:

"Where the lessor sells the property in mitigation of the damages to be sustained by the lessee's breach of the lease, the damages to which the lessor is entitled are the *total discounted rents* provided for in the lease, together with any salvage value of the equipment reasonably to be anticipated at the end of the original lease term, together with reasonable expenses of sale incurred and interest, less the price received in the sale of the equipment and expenses saved by the breach." *Id.* (Emphasis added.)

The burden is upon the adverse parties to introduce evidence of the individual elements as required by *Thomason.* This burden must be carried to enable the trial court or jury to determine the damages (*e.g.,* the burden is upon the lessee to demonstrate at trial an appropriate discounting factor to be used or he may not complain if a different factor is used; lessor to recover the salvage value must provide evidence of that factor).

Upon review of the record, we affirm the trial court's determination that lessor's efforts to sell were commercially unreasonable.  Evidence introduced by the lessee's expert witness concerning computer marketing, computer publications, and computer brokers adequately supports this finding.  We agree with the trial court that to preclude recovery of a deficiency judgment because of the lessor's failure to make commercially reasonable efforts would be contrary to the spirit of commercial reasonableness espoused by the Uniform Commercial Code and would often result in injustice.  It was proper for the trial court to utilize evidence of value introduced by les-

see to offset the damages to the lessor.  Lessee introduced evidence that the computer would have been worth $9,000 at the time it was sold for $3,000 to the original supplier.  The trial court utilized the $9,000 value to offset the damages.  Under the circumstances of this case, this was not error.

We next consider the appellants' contention that the trial court erred by not discounting the total rents in computing the damage award.  We agree.  *Industrial Leasing Corporation v. Thomason, supra,* established the rule of law that when a lessor's damages are computed that future rents are to be discounted to present value.  *Id.* at 578, 532 P.2d at 920;  *see also United Leasing & Financial Services, Inc. v. R.F. Optical, Inc.,* 103 Wis.2d 488, 309 N.W.2d 23 (1981).  This rule of law was formulated to preclude the overcompensation or unjust enrichment of the lessor.  This statement is consistent with our previously expressed purpose or objective which is to place the injured party in a position no better and no worse than if the contract had been performed.  *Industrial Leasing Corporation v. Thomason, supra,* 96 Idaho at 577, 532 P.2d at 919;  *Young Electric Sign Co. v. Capps,* 94 Idaho 518, 522, 492 P.2d 57, 61 (1971);  *King v. Beatrice Foods Co.,* 89 Idaho 52, 58–59, 402 P.2d 966, 969 (1965).

In determining the validity of liquidated damage clauses, we have adhered to the rule set forth in the Restatement of Contracts § 339 (1932):

"An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is *a reasonable forecast of just compensation* for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very

---

**5.**  *Thomason* established the duty upon lessor to mitigate damages by using commercially reasonable efforts which are to be tested by con-

cepts of commercial reasonableness developed under the Uniform Commercial Code.

difficult of accurate estimation." (Emphasis added.) *Young Electric Co. v. Capps, supra* [94 Idaho] at 521, 492 P.2d at 60; *Graves v. Cupic,* 75 Idaho 451, 457, 272 P.2d 1020, 1023–24 (1954).

Our holding that the discounting of future damages is appropriate finds analogous support in the requirement of § 339(a) that the amount fixed as liquidated damages be a reasonable forecast of just compensation. We recognize that money is capable of earning income and therefore rents which are accelerated must be accordingly discounted. Other courts when faced with an absence of evidence as to a rate of interest, have utilized the legal rate of interest. *Freeman v. Lanning Corporation,* 61 Mich. App. 527, 233 N.W.2d 68 (1975); *Groendyke Transport, Inc. v. Merchant,* 380 P.2d 682 (Okl.1962). However, we do not believe that we need to limit the trial court's discretion in this regard. We hold that the discounting rate is a question of fact and must be determined by the trier of fact. Because the trial court's memorandum decision, findings of fact and conclusions of law and order does not address the discounting of the accelerated rental payments, we will not presume such discounting occurred.[6] See I.R.C.P. 52(a).

This cause must be remanded for a recomputation of the damage award. The trial court is directed to utilize the measure of damages established by *Industrial Leasing Corporation v. Thomason, supra.* It is our opinion that the trial court may in its discretion receive additional evidence as to damages. If the trial court chooses not to receive further evidence, it may still determine an appropriate discount rate by taking judicial notice.

## VI.

Appellants try to raise as an issue on appeal an alleged denial by the trial court of attorney fees, costs and expenses pursuant to I.C. § 28–9–507, I.R.C.P. 15(a), and I.R.C.P. 37(c). We find no merit in this argument. Appellants have failed to demonstrate that the issue was ever presented to the trial court; therefore, the issue was not properly preserved for appellate review.

On appeal reasonable attorney fees are awarded the respondent/cross-appellant pursuant to the contract provisions embodied in the lease and guaranty agreements.

Affirmed in part and reversed in part with respect to the computation of damages and remanded with directions.

No costs allowed.

McFADDEN, BISTLINE and SHEPARD, JJ., concur.

McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.

BISTLINE, Justice, concurring specially.

Having concurred in the Court's opinion, I mention my preference that it could have been more expansive in regard to the question raised by the dissent. For certain, the Court's opinion displays a more acute awareness of the issues and holding in *Industrial Leasing* than does the dissenting opinion of Chief Justice Bakes, notwithstanding that the latter authored the *Industrial Leasing* opinion—all of which is of little moment other than that it seems to me that the net result of the two opinions might to some be a little confusing, which confusion in my view can be put to rest.

The dissent properly makes a singular distinction between this case and *Industrial Leasing,* that of no acceleration clause in the latter case while there is one here. The dissent somehow sees this distinction as not requiring that recovery of the reserved rents here should be discounted, and hence would allow the lessor to now collect in full all of the future rents. The author of to-

---

6. The trial court held that the lessor was entitled to the following damages:

"52 Accelerated and Unpaid rental payments not to include the sales tax on rental payments saved by the breach (52 × 383.37 = 19,935.24) minus the commitment fee not including sales tax, ($1,533.48) minus the amount that the computer could have been sold for if it had been sold in a commercially reasonable manner ($9,000) for a judgment of $9401.76."

day's dissent in *Industrial Leasing* wrote for a unanimous court that Industrial Leasing was obliged to make commercially reasonable efforts to release or sell in mitigation, and wrote further that following a lessor's sale in mitigation of damages occasioned by lessee's breach, lessor's damages are then basically "the total discounted rents provided for in the lease" less the net proceeds returned from the sale.[1] 96 Idaho at 578, 532 P.2d at 920.

The portion quoted was perhaps an unfortunate sentence structure. In *Industrial Leasing v. Thomason* there was no provision (in *Young Electric* there was) for liquidated damages which were (in *Young Electric*, 25%) to be discounted from the total of the lease agreements' unpaid and reserved rents. What the author was obviously intending, and apparently then so understood by the other members of the Court, was the view taken by Justice Donaldson, to wit: *the total of the reserved rents, properly discounted.* This is not a difference without a distinction. In *Industrial Leasing v. Thomason* there was not only an absence of an acceleration clause, but an absence of a discount provision to be applied against the accelerated cumulation of all rents—in short, no *declared* provision for liquidated damages. *See Ricker v. Rombough,* 120 Cal.App.Supp.2d 912, 261 P.2d 328 (1953).

In concluding the *Industrial Leasing* opinion, 96 Idaho at 579, 532 P.2d at 921, note was taken of that lessor's contention that it could not accelerate under its lease and was relegated to suing for periodic *installments of rent* as they accrued. The briefs in that case readily disclose that such indeed was continuously Industrial Leasing's case theory, as well evidenced that the appeal came up on a monetary judgment which was rendered against Thomason for only those payments which had accrued at the time suit was filed. In sum, Industrial Leasing took the position that its lease could not be breached, had not been breached, and that it was and would be entitled to sue for and collect all the payments as the same accrued, the equipment at all times for the duration of the lease being "owned" by Thomason. A major holding of the case, however, picked up as such by the publisher as headnote 10, is that

> "where there has been a repudiation of the portion of the lease left unperformed, as in this case, because the damages that will accrue are computable and the lessor may sue for its entire damage, including unaccrued *rental payments* to the extent the lessor is entitled to them, under the rules set out herein." 96 Idaho 579, 532 P.2d at 921. (Emphasis added.)

Whatever the author of that opinion may have intended, it is entirely clear that the foregoing passage, taken together with the remainder of the opinion, leaves no doubt but that for the eight years since *Industrial Leasing v. Thomason* was filed, the law has been that even in the absence of an acceleration clause, or a clause providing for liquidated damages, on a lessee's repudiation of the lease (anticipatory breach) the lessor not only may, but must, sue for all of his reserved rentals, the sum total of which will be subject to a reasonable and proper discount. Such indeed was the very signal which the Court sent out to Industrial Leasing to its dismay in its action against Thomason.

The final paragraph in *Industrial Leasing v. Thomason,* above set forth, though a major holding of the case, was not fortified by any citation of authority. A review of the briefs in that case, however, shows that the Court was supplied with pertinent and persuasive authority. In particular, the Thomason brief twice points to 4 Corbin, *Contracts* § 983:

> the plaintiff lessor sued for damages incurred . . ."—which is an accurate replay of the first sentence in the *Thomason* opinion—itself an inaccuracy. Industrial Leasing's complaint did not seek damages, but an unpaid rental of $19,242.56 plus a five percent service charge.

---

1. Of that statement the dissent says that "the holding in *Thomason* regarding the discounting of rents was not *intended* to extend to leases that include acceleration clauses." (Emphasis added.) Whatever may have been "intended," the language in *Thomason* is clear and unequivocal. The dissent also says that "in *Thomason*

"'§ 983. <u>Anticipatory Repudiation Makes Rule as to Avoidable Consequences Applicable at Once.</u>

Not only are the injured party's duties terminated and his conditions precedent excused; it is now the general rule that when a definite repudiation is communicated to him the <u>rule as to avoidable consequences is at once applicable. He must not proceed with his own performance if his so doing will increase the extent of his injury. He will not be given damages for any part of his loss that he could have avoided by refraining from continued performance or by making reasonable effort.</u> Such decisions as these are clearly in conflict with the notion that by refusing to assent to a repudiation the injured party remains bound as before. Not only is he not bound to perform; he cannot get damages for the additional injury suffered by him if he does perform. Because of the rule as to avoidance of losses, one effect of a repudiation in advance of some performance by the other party is to deprive that party of his contract right to the full price or compensation promised him. But for the repudiation he would have had the power of earning the full contract price by completing what he was to do as the agreed exchange. If the price was to be in money, he could have completed his work and thus created a liquidated debt for the full price. If the price was to be paid otherwise than in money, he could have created a right to the full performance promised in return and to its full value in money in case of nonperformance. After a repudiation, the injured party is deprived of this power, provided that his resulting injury will in fact be less if he stops work than it will be if he continues. (Underlining added [in the brief].)'

. . . .

"... § 983 at p. 949, states that if such a contract provided that the full sum would nevertheless be payable, it should not be enforced because of being a penalty. <u>'The remedy should be damages, measured as above indicated, and not</u> <u>debt for the full sum provided.'</u> 4 Corbin, Contracts, § 983 at p. 949. (Emphasis added [in the brief] )."

A case from *Washington, Northwest Collectors, Inc. v. Enders,* 74 Wash.2d 585, 446 P.2d 200 (1968), cited only without discussion in *Industrial Leasing v. Thomason* at 577 of 96 Idaho, 919 of 532 P.2d, was heavily relied upon in the Thomason brief. A passage from the Thomason brief discussing *Enders* has even greater applicability to this case than it did there.

"It may be helpful to set forth verbatim what the Washington Supreme Court said as it is pertinent here:

"'This court has said that contractual provisions for liquidated damages will be upheld unless it is shown that they are, in effect, a penalty, since there is no reason why an agreement fairly and understandingly entered into with a view to just compensation for an anticipated loss should not be enforced.

"'A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty. (Citations omitted.)

"'*We think the provision here in question falls within this definition. Under it Enders would be required to pay the full contract amount (in advance), whether his breach was total or partial and whether or not the property was fully depreciated.*' 446 P.2d at 205, 206. (Emphasis added [in the brief].)"

The *Thomason* brief further stated that:

"In comparing *Enders* to a sign leasing case, the Washington Court, wholly in accord with the Idaho decision of *Young Electric, supra,* said:

'In that case, the sign which was leased to the defendant was custom-made for him, and there was no showing that it had any value to the lessor for any purpose other than leasing it to the defendant. Under such circumstances, the loss of the rentals for the term would necessarily deprive the lessor of all the value of his investment. But where, as here, the leased property is

capable of being used by others and the lessor can recoup his losses by leasing or selling it, the extraction of its full value for a default in the lease which does not render it valueless is *clearly a penalty.'* 446 P.2d at 206. (Emphasis added [in the brief].)"

Other than that this Court in *Industrial Leasing* did clearly hold that on a lessee's anticipatory breach of a lease agreement all reserved rents are then collectible, and inferentially must be collected in a single action, *and* further that the same are as a matter of law subject to a proper discount,[2] I would have thought that the analysis which might have been used in deciding this case is that set out in *Young Electric Sign Co. v. Capps,* 94 Idaho 518, 492 P.2d 57 (1971), where the Court stated:

" 'Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But, where the forfeiture or damage fixed by the contract is *arbitrary and bears no reasonable relation* to the anticipated damages, and is *exorbitant and unconscionable,* it is regarded as a "penalty," and the contractual provision therefore is void and unenforceable.' " 94 Idaho at 521, 492 P.2d at 60 (citing *Graves v. Cupic,* 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954)) (emphasis added).

*Young* then proceeded to set out a two-part test for determining whether a liquidated damages provision should stand, with which

we no longer, since *Industrial Leasing v. Thomason,* have any legitimate concern.

But, as I repeat, the *Industrial Leasing v. Thomason* holding is quite explicit. In the long run I see it as a sound principle which should avoid considerable litigation as to whether a lessor's exacting of all reserved rents is or is not a penalty. *Industrial Leasing* accepted that it is, but also gave the lessor a right to collect all reserved rents even in the absence of an acceleration clause.

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur in Parts I through IV and Part VI of the majority opinion. I also agree with the majority's conclusion in Part V of its opinion that there was sufficient evidence before the trial court to support its conclusion that the sale was not made in a commercially reasonable manner. I disagree, however, that the trial court erred by not discounting the total rents in computing the damage award. The majority construes the holding in the case of *Industrial Leasing Corp. v. Thomason,* 96 Idaho 574, 532 P.2d 916 (1974), too broadly where it states that the rule of law formulated in *Thomason* "recognizes that money is capable of earning income and therefore rents which are accelerated must be accordingly discounted." The lease agreement in the *Thomason* case did not contain an acceleration clause. Instead, it "provided no measure of damages in the event of default, other than that the lessor might exercise an option provided for in the lease to take possession of the property and either sell or re-lease it to another." *Industrial Leasing Corp. v. Thomason, supra* at 576, 532 P.2d at

2. A cursory review of the Thomason brief seems to indicate that Thomason made no contention that he was entitled to a discount as to reserved rents. The Thomason appellate theory was primarily that Industrial Leasing could not as a matter of law refuse to mitigate damages—which Industrial Leasing steadfastly refused to do based on its "lease" theory that for the contractual period of the bailment Thomason "owned" an estate in the farm equipment placed in Thomason's possession. The default provision in Thomason's lease with Industrial

Leasing simply gave Industrial Leasing the "right to take possession" and to thereupon either (1) sell the equipment and "credit the net proceeds of such sale to the payment of the obligation of lessee hereunder," or (2) to lease the equipment and "apply any rent received therefrom to the payment of the obligations of the lessee hereunder." Industrial Leasing's stance throughout was simply that it was not obligated to exercise its right, that there was no breach, no duty to mitigate, and it could bring successive actions for accruing payments.

918. *Thomason,* therefore, did not involve discounting of rents that became due upon default through an acceleration clause in the lease, and the holding in *Thomason* regarding the discounting of rents was not intended to extend to leases that include acceleration clauses.

The lease agreement in this action, however, provided in paragraph 20 that in the event of default the respondent had the right to exercise any one of several remedies, including:

"(iii) *Lessor may immediately recover from Lessee, with respect to any and all items of Equipment, and with or without repossessing Equipment, the accelerated and total sum of all rent and other amounts due and to become due;* provided, however, that upon repossession or surrender of Equipment, Lessor may sell or otherwise dispose of Equipment, with or without notice and on public or private bid, and apply the net proceeds thereof, after deducting all expenses, including attorneys' fees, incurred in connection therewith, as required by law or in equity." (Emphasis added.)

Thus, under paragraph 20(iii) in the lease agreement between the respondent lessors and the appellant lessees, the respondent was expressly entitled to accelerate all rents under the lease agreement upon default by the appellant. The distinction between the *Thomason* case and the case at hand is that in *Thomason* the plaintiff lessor sued for damages incurred as a result of the lessee's repudiation of the lease. In this case, respondent exercised one of the options provided for in the lease agreement by suing for the amount previously agreed upon by the parties to be due in the event of appellant's breach, determined by "the accelerated and total sum of all rent and other amounts due and to come due."

Other than in a contract of sale, an acceleration clause in a contract such as the lease here is in actuality a liquidated damages provision that establishes damages in the event of a breach. *See generally,* 22 Am.Jur.2d Damages § 228 (1965). This Court has previously held that a liquidated damages clause contained in a contract freely entered into by parties to the contract should be enforced if an accurate determination of damages is difficult or impossible to make and the liquidated damages bear a reasonable relationship to the actual damages suffered. *See, e.g., Young Electric Sign Co. v. Capps,* 94 Idaho 518, 492 P.2d 52 (1971); *Melton v. Amar,* 83 Idaho 99, 358 P.2d 855 (1961); *Graves v. Cupic,* 75 Idaho 451, 272 P.2d 1020 (1954). Thus, an accelerated damages clause contained in a rental agreement should be enforced as liquidated damages in the absence of an allegation and proof that it constitutes an unenforceable penalty. "Provisions in a contract providing for liquidated damages in the event of default are *prima facie* valid," *In re Grodnik's, Inc.,* 128 F.Supp. 941, 942 (D.Minn.1955), and the burden of proving facts to show that damages provided for by the contract do not bear a reasonable relation to the actual damages suffered or that they are exorbitant and unconscionable rests upon the party seeking to invalidate the provision. *Accord, Howard v. Bar Bell Land & Cattle Co.,* 81 Idaho 189, 340 P.2d 103 (1959).

The appellant did not raise the issue of discounting the accelerated damages at trial. Nor did appellant introduce any evidence showing that the liquidated damages provision was unreasonable in light of the actual damages suffered, or that actual damages were not difficult to determine when the agreement was executed. The acceleration clause in the contract entered into in this case made all rents due upon default of the appellant, and there is no legal ground for requiring the rents to be discounted in the absence of such a showing. By *requiring* the district court to discount the rental payments on remand, the majority is in effect holding that all acceleration clauses in rental agreements are unreasonable *per se,* an unwise and unjustified conclusion.

The trial court did not err in failing to discount the accelerated and unpaid rental payments and enforcing the accelerated damages provision according to the agree-

ment of the parties. *Accord, Computer Property Corp. v. Columbia Distributing Corp.,* 493 F.2d 953 (4th Cir.1974) (court held accelerated rentals could be recovered as liquidated damages upon default of lessee under lease of computer equipment); *Frank Nero Auto Lease, Inc. v. Townsend,* 64 Ohio St.2d 65, 411 N.E.2d 507 (1979): *see In re Grodnik's, Inc., supra; Falco Corp. v. Hood,* 7 N.C.App. 717, 173 S.E.2d 578 (1970); *White v. Wilbanks,* 144 S.W.2d 941 (Tex. Civ.App.1940): *cf. Idaho State University v. Mitchell,* 97 Idaho 724, 552 P.2d 776 (1976) (parties are bound by damage provisions included in contract, and liability is restricted to terms of contract); *Young Electric Sign Co. v. Capps, supra* (an agreed to liquidated damages provision will be enforced if damages set forth bear reasonable relation to the anticipated damage).

I would affirm the trial court in its entirety.