788 P.2d 853

**GOODTIMES, INC., a corporation; James T. Goddard, as corporation officer and individually, Plaintiffs–Counterdefendants–Appellants,**

**and**

**Louis Erck, as corporate officer and individually, Plaintiff–Counterdefendant,**

**v.**

**IFG LEASING CO., a corporation, Defendant–Counterclaimant–Respondent,**

**v.**

**MISSIONARY BROADCASTERS, INC., a forfeited Montana Corporation through its statutory trustees, Louis Erck, James T. Goddard, and Ruby J. Erck, Third–Party Defendants.**

No. 17843.

Court of Appeals of Idaho.

March 7, 1990.

As Amended March 13, 1990.

Lyle D. Eliasen, American Falls, for appellants.

Petersen, Moss, Olsen, Meacham & Carr, Idaho Falls, for respondent. Stephen D. Hall, argued.

WESTON, J., Pro Tem.

Goodtimes, Inc., appeals from a summary judgment dismissing its complaint for rescission or reformation of lease agreements. The dispositive issues are: (1) fraud; (2) the applicability of Idaho's usury statute to the lease agreements; and (3) whether the entry of a default judgment on a counterclaim was proper. For reasons explained below, we affirm.

We begin with a brief explanation of the events leading to this appeal. Goodtimes, Inc., was formed by Louis Erck and James Goddard to operate a radio station in Chubbuck, Idaho. Goodtimes contacted IFG Leasing Co. regarding the acquisition and financing of radio broadcasting equipment. On October 5, 1980, an application was submitted to the IFG Leasing's main office. At the same time, IFG Leasing agreed in writing with Goodtimes to "lock in" the proposed lease payment for a thirty-day period. The agreement advised that the quoted lease payment was based on Citibank's then-current prime lending rate of 13.5 percent. The agreement further advised that after the thirty-day period, Goodtimes' prospective rental payments would be adjusted upward or downward depending on future changes in Citibank's lending rate.

On December 18, 1980, Goodtimes executed two lease agreements with IFG Leas-

ing for the lease of the broadcasting equipment. Louis Erck and James Goddard individually guaranteed both leases. The leases were also guaranteed by Mission Broadcasters, Inc., a corporation formed by Goddard and Erck to operate their other radio broadcasting stations. The Chubbuck station began operation in December, 1980. By January 1, 1983, Goodtimes was delinquent on both leases. In order to remedy the default, Goodtimes entered into another agreement with IFG Leasing, increasing the payments on both leases while extending the term of one lease. The parties continued to operate under the modified lease agreements until June 6, 1986, when Goodtimes filed this lawsuit alleging fraud and seeking rescission or reformation. Goodtimes also sought a punitive damage award for the alleged fraud. IFG Leasing answered Goodtimes' complaint and filed a counterclaim to which Goodtimes failed to reply. The district court entered a default judgment on the counterclaim and a summary judgment in favor of IFG Leasing on the complaint. This appeal followed.

When reviewing a summary judgment we determine whether there exist genuine issues of material fact and, if not, whether the prevailing party was entitled to judgment as a matter of law. *Gro–Mor, Inc. v. Butts*, 109 Idaho 1020, 712 P.2d 721 (Ct. App.1985). Where a jury has been requested, we view the facts and inferences from these facts in the light most favorable to the non-moving party. *Bunker Hill Co. v. United Steelworkers*, 107 Idaho 155, 686 P.2d 835 (1984). Here, a jury was requested, presumably in connection with the punitive damage claim.

I

We begin with the fraud issue. Goodtimes contends that IFG Leasing fraudulently induced Goodtimes to enter the transaction with the understanding that it was a sale of equipment, but procured Goodtimes' execution of documents establishing a lease. Goodtimes also claims that IFG Leasing fraudulently based the lease payments on an interest rate of 25.57 percent, rather than the promised 13.5 percent.

The elements for a cause of action based on fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) speaker's knowledge of its falsity or ignorance of its truth; (5) speaker's intent that it should be acted upon by another person and in manner reasonably contemplated; (6) hearer's ignorance of its falsity; (7) hearer's reliance on truth; (8) hearer's right to rely thereon; and (9) hearer's consequent and proximate injury. *Witt v. Jones,* 111 Idaho 165, 722 P.2d 474 (1986).

For purposes of our analysis, we need only consider the eighth element. This element requires that Goodtimes have a right to rely on IFG Leasing's claimed representations either as to the nature of the agreement or as to the interest rate used in determining the amount of the lease payments. As to the nature of the agreements, Goodtimes asserts that the two lease documents actually represent conditional sales contracts. However, the nature of the agreement could readily be determined from the face of each document itself. Both documents specifically stated that they were "leases" rather than conditional sales contracts. Moreover, the documents did not contain any of the attributes normally associated with conditional sales contracts. Such attributes, to name a few, include the transfer of title, the option to purchase at a nominal price and the ability to apply payments toward the purchase of the equipment. With these facts in mind, it is difficult to understand how Goodtimes could have failed to realize that it was signing a lease. With respect to Goodtimes' claim that the interest rate was higher than promised, it must be remembered that interest was not charged as such, but was a factor upon which the lease payments were based. The lease agreements contained such data as the cost of the equipment, the number and amount of the lease payments, as well as the length of the lease. With this information, Goodtimes knew what it was required to pay and could determine the interest rate on which the payments were based. Indeed, Goodtimes used this information in negotiating the subsequent modification of the lease agreements in 1983. Under these circumstances, Goodtimes could not claim reliance upon any claimed misrepresentation of the interest rate used.

Accordingly, we deem it clear—as did the district court—that Goodtimes failed to establish a genuine issue of material fact precluding summary judgment on the fraud issue. The district court also held that any fraud claim was barred by the statute of limitation, I.C. § 5-218, but we need not pass upon that alternative ground for the judgment.

II

We now consider the second issue, the asserted effect of Idaho's usury statute, I.C. § 28-22-105 (since repealed), on the lease agreements. This issue underlies Goodtimes' contention that if the lease payments had been computed by reference to lower interest rates, the payments made by Goodtimes would have been sufficient to avoid a default.

Goodtimes appears to acknowledge that a lease does not implicate the usury statute; it does not involve an extension of credit. Goodtimes contends, however, that the lease in this case was, in substance, a disguised conditional sale used to circumvent the state usury laws. In examining such a claim, "the courts ... consider all the facts and circumstances surrounding an agreement to determine the real nature of the transaction." *Transportation Equipment Rentals, Inc. v. Ivie,* 96 Idaho 223, 224, 526 P.2d 828, 829 (1974). Here, several factors lean in favor of characterizing this financing arrangement as a lease. The original lease did not provide Goodtimes with an option to purchase the equipment. In fact, the lease specifically provided that upon its expiration, the equipment was to be returned to IFG Leasing. It was not until a separate agreement was signed between Goodtimes and IFG Leasing that Goodtimes was entitled to purchase the equipment—and then only for fair market value. Thus, the lease terms did not provide Goodtimes with the right to build equity in the equipment. Finally, the financing arrangement specifically provided that title

to the equipment would remain with IFG Leasing.

■ Moreover, we note that even if the transaction were viewed as a sale rather than as a lease, the usury statute would not necessarily apply. To constitute usury, the test is whether excessive interest is charged on either a loan of money, the extension of time for payment, or forbearance on an existing debt. *Meridian Bowling Lanes, Inc. v. Brown*, 90 Idaho 403, 412 P.2d 586 (1966). Our Supreme Court has held that bona fide sales transactions are not subject to the state's usury laws. *Buchanan v. Dairy Cows*, 97 Idaho 481, 547 P.2d 526 (1976). The Court took this position in *Buchanan* despite an emphatic dissent by Justice McFadden. The Court declared that the usury statute applies only to loans, or to disguised loans, as opposed to credit sales. The Court also declared that the usury statute was intended to protect only "necessitous debtors," a characterization that could not be applied to the lessees in *Buchanan* nor to the lessees in the present case. Accordingly, we conclude that summary judgment was correctly entered against Goodtimes' usury claims.

## III

■ Finally, Goodtimes contends the district court erred by permitting IFG Leasing to obtain a default judgment on its counterclaim. Goodtimes' argument focuses on three points. First, Goodtimes asserts that it received no notice of IFG Leasing's intent to take default. Second, Goodtimes claims the district judge effectively set the default judgment aside during a prior telephone status conference held on February 18, 1988. Thirdly, Goodtimes argues that I.R.C.P. 55(a)(3) prevented the entry of default judgment.

In general, relief from a default judgment rests in the sound discretion of the district court and such decisions will not be disturbed on appeal in the absence of abuse of discretion. *Johnson v. Pioneer Title Co. of Ada County*, 104 Idaho 727, 662 P.2d 1171 (Ct.App.1983) (reviewed denied). In this case, however, each of Goodtimes'

arguments contains an assertion of procedural irregularity; therefore, we exercise the free review applicable to questions of law.

Goodtimes contends that no notice of intent to take default was given as required by I.R.C.P. 55(b)(2). After examining the record, we cannot agree. The augmented record indicates that two notices of intent to take default were mailed: one on November 19, 1986, and the other on October 23, 1987. Goodtimes' argument on this point is without merit.

We likewise find no support in the record for Goodtimes' assertion that the default judgment was orally set aside by the district court judge. IFG Leasing argues that no such order was ever given. Because there is nothing in the record to support Goodtimes' position, we must reject it.

We now address Goodtimes' third contention that I.R.C.P. 55(a)(3) prevented the entry of the default judgment. Rule 55(a)(3) states:

This rule shall not prevent a trial hearing on any action which is *at issue* in which the parties are represented in person or by their attorneys of record, which hearing shall not be deemed a default hearing whether or not a defending party actively participates or opposes the claim of another. [Emphasis added.]

The rule deals only with actions placed "at issue" by responsive pleadings. Indeed, any broader reading would eliminate the efficacy of Rule 55(b)(2) and Rule 55(d). Rule 55(b)(2) sets out the requirements for obtaining a default judgment. Rule 55(d) states that Rule 55(b)(2) applies when the party entitled to the judgment is a third-party plaintiff or a party who has pleaded a counterclaim. Here, no reply was filed by Goodtimes to the counterclaim against it. The claim had not been put "at issue." We also note that no motion was made to set aside the default judgment under Rule 55(c). Based on the above, we hold that the trial court did not commit error by entering a default judgment.

In sum, we affirm the judgments entered in favor of IFG Leasing. The district

court's award of costs and attorney fees is also affirmed. On appeal, we award IFG Leasing costs and attorney fees in accordance with the terms of the lease agreements.

WALTERS, C.J., and BURNETT, J., concur.